**ELECTRO–MECHANICAL CORPORATION, Plan Administrator for the Employee Benefit Plan of Line Power Manufacturing Corporation**

v.

**Douglas L. OGAN and wife, Karen E. Ogan, etc., et al.**

No. CIV–2–92–05.

United States District Court,
E.D. Tennessee,
at Greeneville.

Sept. 1, 1992.

William C. Bovender, Hunter, Smith & Davis, Kingsport, TN, C. Thomas Davenport, Jr., Electro–Mechanical Corp., Bristol, VA, for plaintiff.

Olen G. Haynes, Hicks, Arnold, Haynes & Sanders, Johnson City, TN, for defendants.

## MEMORANDUM AND ORDER

HULL, District Judge.

This ERISA matter is before the Court to consider motions for summary judgment filed by both parties. After careful consideration of the record as a whole, the Court finds as follows:

## I. UNCONTESTED FINDINGS OF FACT AND CONCLUSIONS OF LAW:

1. The subject matter and *in personam* jurisdiction of this Court are not challenged, nor is the venue.

2. This action arises under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*

3. It is uncontested:

(A) That Defendant Douglas L. Ogan is and was at all times material to this action, employed by Line Power Manufacturing Corporation ("LPMC").

(B) Mr. Ogan and other employees of LPMC are covered by an employee welfare benefit Plan ("Plan") within the meaning of ERISA, § 3(1), 29 U.S.C. § 1002(1), that provides health benefits to LPMC employees and their dependents.

(C) Electro–Mechanical Corporation ("E–M Corp."), a sister company of LPMC, is the Plan Administrator.

(D) The Plan is self-funded; and has been since August 22, 1988, for purposes of this lawsuit.

(E) Nathan Douglas Ogan has received health care benefits from the Plan, funded by his father's employer, since August 22, 1988, also for purposes of this lawsuit.

4. Other uncontested facts, submitted by the plaintiff, include the following:

(A) The Plan, which became effective August 22, 1988, contains a Subrogation provision which reads as follows:

SUBROGATION

If any payment is made under this Plan, the Plan Administrator will be subrogated to all the rights of recovery of the covered person to whom or for whose benefit the payment was made, to the extent of the amount paid. The covered person will execute and deliver instruments and papers and do whatever else is necessary to secure these rights and will do nothing to prejudice such rights.

(B) The Plan was amended as of January 1, 1992, retroactive to October 1, 1991. The October, 1991 Plan likewise contains a Subrogation provision similar to the 1988 Plan:

SUBROGATION

If any payment is made under this Plan, the Plan Administrator will be subrogated to all the rights of recovery of the covered person for whom benefits are paid.

If you or your Dependents recover damages from a third party(ies) which related to a condition for which the Plan incurred expenses, the Plan shall be entitled to reimbursement to the extent of any such expenses incurred. You and your dependents must notify the Plan of this possibility and must cooperate fully with the Plan in this regard and must do nothing that may prejudice the Plan's rights.

(C) The right to amend the 1988 Plan arises directly from same:

PLAN MODIFICATION AND AMEND-MENT

The Employer may modify or amend the Plan from time to time at its sole discretion and such amendments or modifications which affect covered participants will be communicated to participants.

(D) Sometime in 1987, defendants Ogans instituted a medical malpractice civil action against Hospital Corporation of America, Indian Path Hospital, and Doctors Reedy and Kerr. *See,* Amended Complaint, Law Court for Sullivan County, Tennessee, No. 25138(L).

(E) A judgment was entered May 11, 1990, reflecting approval of a settlement and minor's settlement in said civil action. The total amount of the settlement was $1,100,-000. Of this amount, $200,000 went to defendants Douglas L. and Karen E. Ogan; $321,-789.77 went to Attorney Haynes for fees and expenses; and the balance of $578,210.23 was paid into the Court for the benefit of Nathan Douglas Ogan. Defendant Hamilton Bank of Upper East Tennessee was named special guardian for Nathan Douglas Ogan to manage and monitor the use of said funds for the minor, same ultimately being placed on deposit with said Bank.

(F) At no time have the defendants offered to reimburse the Plan for any amounts expended, reimbursed the Plan, or otherwise acknowledged any obligation to reimburse or otherwise comply with the respective Subrogation provisions quoted hereinabove.

(G) Demand was first made orally on defendant Douglas L. Ogan in August or early September, 1991 for reimbursement by Eugene Estep, Personnel Director of E–M Corp., on behalf of the Plan.

(H) Written demand for reimbursement was made on the defendants and their attorney by the General Counsel for E–M Corp., Mr. Davenport, by letter dated December 9, 1991.

(I) The amount expended by the self-funded Plan from August 22, 1988 to September 30, 1991 was $118,037.92. The amount expended by the Plan since October 1, 1991 to present is $21,745.78, for a total expenditure to date of $139,783.70. It is anticipated that Nathan Douglas Ogan will continue to require health care in the future and that claims will continue to be presented to the Plan for payment.

## II. PLAINTIFF'S SUMMARY JUDGMENT THEORIES

1. Pursuant to the Subrogation provisions of the 1988 Plan and the 1991 Plan, the Plan has a right to reimbursement from the defendants for the amounts the Plan has expended for health care on behalf of Nathan Douglas Ogan.

2. The so-called "deemer clause" of ERISA, § 514(b)(2)(B), 29 U.S.C. § 1144(b)(2)(B), exempts the Plan from any and all arguably applicable state law which purports to prohibit or regulate the right of subrogation created in the Plan. Said state law is also preempted by ERISA, § 514(a), 29 U.S.C. § 1144(a).

3. The right of subrogation under the 1988 and 1991 Plans extends not only to recoveries from third party tortfeasors made by employees of LPMC covered by the Plans, but also their dependents who are covered by the Plans, including Nathan Douglas Ogan.

## III. DEFENDANTS' SUMMARY JUDGMENT THEORIES

1. T.C.A. § 29–26–119 of the Tennessee Medical Malpractice Act, which prevents recovery of benefits paid by third parties, affects the plaintiff's ERISA Plan in only a tenuous and remote manner, and as such, is not preempted by ERISA.

2. The plaintiff has not complied with the provisions of ERISA found in 29 U.S.C. § 1022(a) & (b) and 29 U.S.C. § 1104(a)(1) in that there was no explanation of the significance and effect of the "subrogation" provision added to the Plan.

3. Having utilized the term "subrogation" in its Plan without any definition or explanation, the Plaintiff is now bound by the legal principles associated with "subrogation", including the legal principles of equity, which should not require reimbursement of medical expenses from the proceeds of a personal injury settlement, when the claimant recovered no such medical expenses.

## CONCLUSIONS OF LAW

### 1. PREEMPTION ISSUE

█ The defendants contend that the plaintiff is not entitled to recover benefits paid to them by third parties pursuant to the Tennessee Medical Malpractice Act, because the provisions of Tenn.Code Ann. § 29–26–119 prevent such a recovery. This section provides:

> **29–26–119. Damages.**—In a malpractice action in which liability is admitted or established, the damages awarded may include (in addition to other elements of damages authorized by law) actual economic losses suffered by the claimant by reason of the personal injury, including, but not limited to cost of reasonable and necessary medical care, rehabilitation services and custodial care, loss of services and loss of earner income, but only to the extent that such costs are not paid or payable and such losses are not replaced, or indemnified in whole or in part, by insurance provided by an employer either governmental or private, by social security benefits, service benefit programs, unemployment benefits, or any other source except the assets of the claimants or of the members of the claimants' immediate family and insurance purchased in whole or in part, privately and individually.

However, inasmuch as this statute purportedly destroys the Plan's right of subrogation, the Court finds that *FMC Corporation v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), is controlling. In that case, the United States Supreme Court specifically holds that ERISA preempts the application of a Pennsylvania state statute which prohibited the exercise of subrogation rights by an employee benefit Plan on an automobile accident tort recovery.

In the case at bar, the reasoning of the Supreme Court applies equally well. In *FMC Corp.*, at 57, 111 S.Ct. at 407, 112 L.Ed.2d at 364, the Court addresses preemption and the deemer clause in general as follows:

> We indicated in *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 85 L.Ed.2d 728, 105 S.Ct. 2380 (1985), that these provisions "are not a model of legislative draft-

ing." *Id.*, at 739, 85 L.Ed.2d 728, 105 S.Ct. 2380. Their operation is nevertheless discernible. The preemption clause is conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that "relate[s] to" an employee benefit Plan governed by ERISA. The saving clause returns to the States the power to enforce those state laws that "regulat[e] insurance," except as provided in the deemer clause. Under the deemer clause, an employee benefit Plan governed by ERISA shall not be "deemed" an insurance company, an insurer, or engaged in the business of insurance for purposes of state laws "purporting to regulate" insurance companies or insurance contracts.

In *FMC Corp., supra*, at 53–62, 111 S.Ct. at 404–410, 112 L.Ed.2d at 360–367, the Supreme Court succinctly summarizes Congressional intent in regard to the passage of ERISA and the deemer clause as follows:

> Congress intended by ERISA to "establish pension Plan regulation as exclusively a federal concern." *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. [504], at 523, 68 L.Ed.2d 402 [at 416], 101 S.Ct. 1895 [at 1906] (footnote omitted). Our interpretation of the deemer clause makes clear that if a plan is insured, a State may regulate it indirectly through regulation of its insurer and its insurer's insurance contracts; if the plan is uninsured, the State may not regulate it. As a result, employers will not face "conflicting or inconsistent State and local regulation of employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. [85], at 99, 77 L.Ed.2d 490 [at 502], 103 S.Ct. 2890 [at 2901] (quoting remarks of Sen. Williams). A construction of the deemer clause that exempts employee benefits from only those state regulations that encroach upon core ERISA concerns or that apply to insurance as a business would be fraught with administrative difficulties, necessitating definition of core ERISA concerns and of what constitutes business activity. It would therefore undermine Congress' desire to avoid "endless litigation over the validity of State action," *see* 120 Cong.Rec. 29942 (1974) (remarks of

350

Sen. Javits), and instead lead to employee benefit plans' expenditure of funds in such litigation.

It is undisputed that the Plan before this Court is self-funded. Therefore, the Court finds that the plaintiff employee benefit Plan in this case cannot be "deemed" an insurance company and ERISA preempts applicable state law.

The Court also finds that ERISA preempts more than the Tennessee Medical Malpractice Act, or any Tennessee statute which purports to restrict the right of subrogation of a self-funded Plan, because the Supreme Court in *FMC Corp., supra,* 498 U.S. at 62, 111 S.Ct. at 410, 112 L.Ed.2d at 368 specifically states:

> Nor, in our view, is the deemer clause directed solely at laws governing the business of insurance. It is plainly directed at "any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." § 514(b)(2)(B), 29 USC § 1144(b)(2)(B), [29 USCS § 1144(b)(2)(B)]. Moreover, it is difficult to understand why Congress would have included insurance contracts in the preemption clause if it meant only to preempt state laws relating to the operation of insurance as a business.

The defendant also alleges that case law principles of equity and waiver operate to defeat the Plan's right of subrogation by virtue of an inadequate definition of "subrogation." The Court finds that this is equally at odds with the Congressional purpose of uniformity of regulations in regard to pension plans, and that this is merely an attempt to utilize case law to defeat a right of subrogation in a self-funded Plan, when this cannot be accomplished by use of a specific statute. Therefore, because the deemer clause is broad enough to encompass "any law of any state purporting to regulate insurance companies or insurance contracts," the Court finds that principles of equity and waiver cannot be utilized to defeat the subrogation contract in this cause.

## FAILURE TO COMPLY WITH ERISA PROVISIONS

The defendants also contend that the plaintiff has not complied with 29 U.S.C. § 1022(a) and (b) and 29 U.S.C. § 1104(a)(1), because there was no explanation of the significance and effect of the "subrogation" provision added to the Plan. However, the Court finds that the term subrogation is susceptible to but one meaning, as set out in the Plan, and that the defendants are bound by the clear terms of the Plan.

## CONCLUSION

Accordingly, it is hereby ORDERED that the plaintiff's motion for summary judgment is GRANTED, that the defendants' motion for summary judgment is DENIED, that the plaintiff is entitled to subrogation for the amount of health care expenses paid to the date of this Order, and that the plaintiff is entitled to the right of reimbursement against the defendants' settlement proceeds, as set out herein, in the future. The plaintiff will have ten (10) days from the date hereof to update and itemize health care expenses paid to the date of this order.