**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 15 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

---

MEMBER SERVICES LIFE INSURANCE
COMPANY, doing business as MEMBER
SERVICE ADMINISTRATORS, as Third
Party Administrator of the LIBERTY
GLASS COMPANY ERISA QUALIFIED
EMPLOYEE BENEFIT PLAN,

     Plaintiff-Appellee,

v.

AMERICAN NATIONAL BANK AND
TRUST COMPANY OF SAPULPA, as
guardian of William Brooks Balthis, Debra
Leanne Balthis, and David Douglas
Balthis,

     Defendant-Appellant,

and

E. TERRILL CORLEY, THOMAS F.
GANEM, STEVEN R. CLARK,
BRADFORD J. WILLIAMS, and
WALTER M. JONES,

     Defendants-Appellees.

Nos. 96-5122
96-5183

---

Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. CIV-95-27-H)

Sam T. Allen IV of Loeffler, Allen & Ham, Sapulpa, Oklahoma (Sam T. Allen III with him on the briefs), for Defendant-Appellant.

E. Terrill Corley of Corley & Ganem, Tulsa, Oklahoma (Thomas F. Ganem with him on the brief for Defendants-Appellees), for Defendants-Appellees.

Phil R. Richards of Richards, Paul & Richards, Tulsa, Oklahoma, (Thomas D. Hird with him on the brief), for Plaintiff-Appellee.

---

Before **SEYMOUR**, Chief Judge, **EBEL** and **BRISCOE**, Circuit Judges.

---

**SEYMOUR**, Chief Judge.

Member Services Life Insurance Company, doing business as Member Services Administrators (MSA), brought this action under section 502(a)(3) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(3), and federal common law to recover payments it made under an ERISA welfare benefit plan to American National Bank and Trust Company of Sapulpa (ANB), the guardian of minor children who were beneficiaries of the plan. MSA claimed the right to recoupment based on the contract as well as on principles of unjust enrichment, restitution, and equitable subrogation. The district court granted summary judgment for MSA, ruling that it was entitled to recovery under an amendment to the plan providing for subrogation. ANB appeals and we reverse.

I

The underlying facts are undisputed. MSA administers a self-funded ERISA welfare benefit plan established by the Liberty Glass Company. Jeff Balthis, the father of the minor children for whom ANB is the guardian, is an employee of Liberty Glass and his minor children are beneficiaries under the plan. In February 1988, the minor children suffered severe injuries in a fire caused by a BIC lighter, and the plan thereafter paid $570,368.75 in medical expenses incurred by the children. At the time these benefits were paid, the plan did not contain a provision permitting the recoupment of benefits from funds obtained by

a beneficiary from a third party tortfeasor. Although the plan from its inception had provisions permitting it to be amended or modified, it had no provision addressing whether such amendments could be given retroactive effect. In October 1988, the plan was amended to add a provision giving MSA a right of recoupment if a beneficiary received money from a negligent third party as a result of injuries for which the plan had paid benefits. The amendment provided that it was retroactively effective as of March 1, 1988.

ANB as guardian of the minor children brought an action against the BIC Corporation on April 1, 1990, alleging that BIC was liable under the doctrine of product liability for the injuries to the children. ANB was represented in its suit against BIC by E. Terrill Corley, Thomas F. Ganem, Stephen R. Clark, and Bradford Williams (the attorneys) pursuant to a court-approved attorney fee contract under which the attorneys were to receive a fee of fifty percent of all amounts collected after the deduction of case expenses. While the lawsuit was pending, MSA made a demand under the 1988 amendment for reimbursement of the medical expenses MSA paid on behalf of the children from any judgment or settlement in the suit. The attorneys rejected the claim, pointing out that the amendment upon which MSA relied allowed recoupment from a recovery based on negligence, and the claim against BIC was based only on the theory of product liability. A judgment was entered against BIC on October 26, 1992, for actual

and punitive damages, and ANB ultimately recovered $19 million on behalf of the minor children. BIC was held liable solely on the basis of product liability and was specifically found not to have been negligent.

On January 1, 1993, the 1988 amendment was modified to authorize recoupment of any monies received by a beneficiary from a third-party tortfeasor held liable under *any* theory of law or equity. This amendment required that such funds be held in trust until paid in satisfaction of the plan's right of recoupment, and further provided that the amendment was retroactively effective as of August 1, 1987, the date of the plan's inception. Contemporaneously with the payment of the judgment by BIC, $570,368.75 was placed into escrow pending a determination of MSA's ability to enforce its right of recoupment under the 1993 amendment.

MSA brought the instant action against both ANB and the attorneys to recover the funds placed in escrow, as well as interest and attorneys fees expended in obtaining the funds. Defendants responded that the plan, as a contract between the parties, could not be retroactively amended to deprive the minor children of benefits. As an alternative counterclaim, defendant attorneys asserted that if MSA were awarded the escrowed funds, the attorneys were entitled to fifty percent in accordance with their fee contract. Although MSA recognized that the fee agreement between the attorneys and ANB could generate

a claim by the attorneys to some or all of the escrow funds, MSA asserted that its claim was superior to that of both ANB and the attorneys and that it was therefore entitled to the entire amount. MSA also sought an adjudication that the minor children were not entitled to the payment of future benefits from the plan until each child's expenses equaled the amount of the judgment awarded to that child.

The district court ruled in favor of MSA, holding that the 1993 amendment could be applied retroactively to enable MSA to recoup payments paid to the beneficiaries before the amendment was enacted. The court also ruled that MSA's obligation to pay future benefits on behalf of each child would not arise until that child had exhausted the amount of his or her judgment.[1] Finally, the court held that the attorneys were entitled to receive a fee in connection with the escrowed funds. Although the court observed that "if the attorneys had been unsuccessful in prosecuting the state court lawsuit, [MSA] would not receive any recoupment whatsoever," the court nonetheless held that "[t]o the extent that the payment of the attorneys' fees decreases the escrowed amount available for recoupment, [MSA] will be entitled to recoupment from the portion of the

---

[1]ANB concedes that the 1993 amendment applies to those medical benefits that would otherwise have been paid by the plan after the date the amendment was enacted. Accordingly, any expenses incurred after that date must be paid out of the children's judgments until those judgments are exhausted. We are concerned in this opinion only with recoupment of those benefits paid by the plan before enactment of the 1993 amendment.

judgment not currently held in escrow." Supp. App. of Atty. Aplees. at 182-83.

The court's ruling in effect relieved MSA from the obligation to pay any attorneys fees and placed the entire fee responsibility on ANB, as the court subsequently held in a supplemental order. Thus, the court awarded fees to defendant attorneys against their own co-defendant client even though the attorneys had asserted no claim against their client by way of a cross-claim or otherwise.

On appeal, ANB and the attorneys assert the court erroneously applied the 1993 amendment retroactively to allow MSA to recover expenses it had paid prior to adoption of the amendment. ANB alternatively raises several challenges to the district court's ruling that the attorneys fee award must be paid out of funds not held in escrow. ANB argues in essence that this ruling granted the attorneys relief they did not request against their own client, whom they did not sue. Specifically, ANB contends the entry of this judgment violated its due process rights, was based upon a misreading of the fee agreement, and deprived it of its right to a jury trial. The attorneys argue alternatively that if MSA prevails, MSA should share in the payment of the attorneys fees for services rendered on its behalf and with its knowledge and approval. We hold the district court erred in determining that the 1993 amendment could be applied retroactively to allow

recoupment of benefits already paid, and we therefore need not consider the propriety of the fee ruling.[2]

## II

ERISA regulates two types of benefit plans, pension benefit plans that create vested rights and welfare benefit plans that need not create vested rights. See Chiles v. Ceridian Corp., 95 F.3d 1505, 1510 (10th Cir. 1996). The plan at issue here is a welfare benefit plan. As such it is "exempt from the statutory vesting requirements that ERISA imposes on pension benefits. Accordingly, an employer may amend the terms of a welfare benefit plan or terminate it entirely." Wheeler v. Dynamic Eng'g, Inc., 62 F.3d 634, 637 (4th Cir. 1995) (citations omitted).

"However, benefits under a welfare benefit plan may vest under the terms of the plan itself." Id. at 637-38. Because, as MSA agrees, an amendment to any ERISA plan may not operate retroactively if that amendment deprives a beneficiary of a vested benefit, see Chiles, 95 F.3d at 1510; Wheeler, 62 F.3d at 640, we must ascertain whether the medical benefits here were vested at the time MSA sought to recoup them under the 1993 amendment. In making this

---

[2]ANB concedes that if the children are entitled to the funds in escrow, the attorneys will receive 50% of the amount as their fee.

assessment, we apply "the principles of contract interpretation." Chiles, 95 F.3d at 1515. We are also guided by the Supreme Court's admonition that "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989) (internal quotations and citations omitted). In general,

> [c]overage under a medical insurance policy or plan is normally triggered by one of two events. If a policy insures against illness, coverage for all medical costs arising from a particular illness vests when the illness occurs. If a policy insures against expenses, coverage vests when the expenses are incurred.

Wheeler, 62 F.3d at 638 (citation omitted). We need not determine whether the plan here vests coverage on the basis of illness or on the basis of expenses. Even adopting the construction most favorable to MSA and construing the plan as vesting coverage at the time expenses are incurred, the medical expenses MSA seeks to recoup were incurred and paid, and therefore vested, before the plan was modified by the 1993 amendment. Accordingly, retroactive application of the amendment in these circumstances would impermissibly destroy vested rights.

The cases relied on by the district court are distinguishable because none of them approved the retroactive application of an amendment to allow a plan to recover benefits that had vested through payment. In Dyce v. Salaried Employees' Pension Plan, 15 F.3d 163 (11th Cir. 1994), for example,

-9-

beneficiaries of a pension benefit plan sought early retirement benefits based on the claim that the merger of their company with another terminated their employment with the old company and resulted in their automatic retirement even though they remained employed by the new company. Their claims were administratively denied on the basis of an amendment formally adopted after the merger that made participants ineligible for early retirement benefits as long as they were employed by the surviving company. Id. at 164. The court held that under the plain language of the plan, the merger did not result in the automatic retirement of these employees because the plan required them to "elect to retire," which none of them had done. Id. at 166. As the court pointed out, the employees were free both before and after the merger to elect early retirement and receive benefits under the plan. The court concluded that the amendment was properly applied retroactively because it did not deprive the employees of a benefit to which they were otherwise entitled. Id. Although the facts in Dyce are too dissimilar to the instant case to be particularly helpful, we find it significant that the retroactive application of the amendment there did not take away benefits that had already been paid.

Electro-Mechanical Corp. v. Ogan, 9 F.3d 445 (6th Cir. 1993), did involve facts somewhat analogous to those before us. In Ogan, the beneficiary was born in July 1986 with severe disabilities. In August 1987, a medical malpractice suit

was brought on his behalf and was settled for over $1,000,000. At the time of the beneficiary's birth, the plan in effect did not contain a subrogation clause authorizing the recovery of benefits in the event the beneficiary recovered from a third person. Before settlement was reached, a new plan providing the right of subrogation was adopted in 1988. The court upheld enforcement of the clause. Id. at 447. Significantly, however, when the district court opinion in Ogan is read in conjunction with the circuit court opinion, it is clear that the plan sought to recover only those benefits paid *after* the subrogation clause was adopted.[3] Likewise in Owens v. Storehouse, Inc., 984 F.2d 394, 397 (11th Cir. 1993), although the plan at issue was modified to cap benefits for an illness that the beneficiary had previously contracted and for which the plan had already paid benefits, the plan applied the cap prospectively only and did not seek to recoup benefits already paid.

Indeed, we have found no case in which a court has allowed retroactive recoupment under circumstances similar to those present here. To the contrary, courts, including this one, have in a variety of contexts rejected attempts to apply

---

[3]The circuit court opinion states that the plan sought reimbursement of medical expenses paid on behalf of the beneficiary in the amount of $139,783.70. Electro-Mechanical Corp. v. Ogan, 9 F.3d 445, 447 & n.2 (6th Cir. 1993). The district court opinion states that the plan had paid that same amount, $139,783.70, as medical expenses from August 22, 1988, the date on which the subrogation clause was added, to the date of the court's ruling. See Electro-Mechanical Corp. v. Ogan, 820 F. Supp. 346, 348 (E.D. Tenn. 1992).

-11-

plan modifications retroactively to affect benefits that had already become due. In Filipowicz v. American Stores Benefit Plans, 56 F.3d 807 (7th Cir. 1995), the court refused to give retroactive effect to a life insurance plan modification that would have taken away benefits owed on the insured's death. The court acknowledged that the plan was a welfare benefit plan not subject to vesting requirements under ERISA, but nonetheless held that because the right to the insurance benefits vested at the insured's death under general insurance law, "[a] later modification, even one which is retroactive, can have no effect on a beneficiary's claim to benefits." Id. at 815. The court rejected the plan's argument that it could "retroactively modify a life insurance policy after the insured's death so as to take away the life insurance proceeds due a beneficiary at the date of the insured's death." Id. The court applied insurance contract principles to determine that the claim had vested and accordingly held, as we do, that a subsequent modification could not be applied to those vested benefits.

Similarly, in Bartlett v. Marietta Operations Support, Life Ins., 38 F.3d 514 (10th Cir. 1994), we considered whether a summary plan description redefining eligibility for life insurance benefits applied when the insured had elected coverage and had died before the summary had been distributed or made available to him. We held that the district court had "properly decided to disregard the subsequent language of the summary plan description because it was not printed

or made available to employees until after [the insured's] death. The court reasoned that [the insured], through his beneficiary, could not be bound to terms of the policy of which he had no notice." Id. at 517. We agreed with

> the district court's conclusion that the language had no effect because it had not been published and distributed until after [the insured's] death. Subsequent modifications to the plan, through the drafting of the summary plan description, do not effect the terms of the written plan in existence when the [beneficiary's] claim arose.

Id.

In Confer v. Custom Eng'g Co., 952 F.2d 41 (3d Cir. 1991) (per curiam), the court addressed the effect of an oral announcement excluding motorcycle accidents from coverage under a welfare benefits plan. The beneficiary sought coverage for a motorcycle accident that had occurred after the oral announcement but before a written amendment had been executed and backdated to an effective date prior to the accident. Id. at 42-43. The court held that the oral announcement was not effective and that the formal written amendment operated prospectively only. Id. at 43.

Finally, we view as instructive the court's discussion in McGann v. H & H Music Co., 946 F.2d 401 (5th Cir. 1991). There an employee was a beneficiary under a welfare benefits plan that originally provided for lifetime medical benefits of $1,000,000. The employee contracted AIDS and informed his employer. The plan was thereafter amended to provide a lifetime maximum

-13-

limitation of $5000 on benefits payable for AIDS-related claims. The employee brought an action asserting that the amendment violated section 510 of ERISA, 29 U.S.C. § 1140, which prohibits interference with protected rights. Id. at 403. The court rejected this argument, holding that section 510 protected only rights "to which an employee may become entitled pursuant to an existing, enforceable obligation assumed by the employer." Id. at 405. The court pointed out that the plan never guaranteed the *continued* availability of the original $1,000,000 limit. While the $1,000,000 limit was in effect, the employee had been fully reimbursed for all claimed expenses incurred. Moreover, after the date of the amendment imposing the $5,000 limit on AIDS-related claims, the employee had been reimbursed for up to $5,000 of all such expenses. Thus, the employer had at all times honored the existing, enforceable obligations it had assumed. Id. at 405 & n.5.

The results in the above opinions rest on two interrelated principles relevant to contract law and to ERISA claims in particular. The notion of protecting vested rights prevents one party to a contract from unilaterally changing the terms of performance after that performance has become due. While it is true that benefits need never vest prospectively under an ERISA welfare benefit plan, the above cases and general principles of insurance contract law hold that such benefits do vest when performance is due under the contract. At

that point, the contract is no longer executory and must be performed in accordance with the terms then in existence.

The second and related principle underlying the above cases is that of notice. As we stated in Bartlett, a beneficiary can "not be bound to terms of the policy of which he had no notice." 38 F.3d at 517. "[O]ne of ERISA's central goals is to enable plan beneficiaries to learn their rights and obligations at any time." Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 83 (1995). This goal is implemented by a scheme "built around reliance on the face of written plan documents." Id.

> The basis of that scheme is another of ERISA's core functional requirements, that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." In the words of the key congressional report, "[a] written plan is to be required in order that every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan."

Id. (citations omitted)

In order to effectuate reliance upon written plan documents, ERISA requires plan administrators to furnish beneficiaries with summaries of new amendments no later than 210 days after the end of the plan year in which the amendment is adopted. See 29 U.S.C. § 1024(b)(1). This automatic notice requirement does not, as MSA suggests, authorize a plan administrator to apply an

-15-

amendment retroactively under the circumstances present here. As the Supreme

Court pointed out in <u>Curtiss-Wright</u>,

> independent of any information automatically distributed to beneficiaries [under section 1024(b)(1)], ERISA requires that every plan administrator make available for inspection in the administrator's "principle office" and other designated locations a set of all currently operative, governing plan documents, see § 1024(b)(2), which necessarily includes any new, bona fide amendments. As indicated earlier, <u>plan administrators appear to have a statutory responsibility actually to run the plan in accordance with the currently operative, governing plan documents</u> and thus an independent incentive for obtaining new amendments as quickly as possible and for weeding out defective ones.

514 U.S. at 84 (emphasis added) (citation omitted). Because plan administrators

have an obligation imposed by ERISA to operate the plan according to current

plan documents, a post hoc amendment clearly cannot alter a plan provision in

effect at the time performance under the plan became due.

MSA argues, and the district court agreed, that allowing recoupment here

would not deprive the beneficiaries of benefits to which they were otherwise

entitled because they received payment of their medical expenses when they were

due and would simply be repaying them out of their judgments. As our discussion

makes clear, however, this argument is fundamentally flawed in several respects.

At the time MSA was required to perform under the plan, the plan documents then

in existence not only provided the beneficiaries the right to payment of their

medical expenses, it did so unencumbered by any duty to reimburse MSA.

Allowing retroactive application of the 1993 amendment here would therefore deprive the beneficiaries of the unencumbered right to which they were entitled at the time of performance.  Moreover, allowing recoupment on the basis of a later amendment would bind the beneficiaries to a contract provision of which they had no notice when performance was due, contrary to our holding in Bartlett, and would violate the duty imposed on MSA by ERISA to operate the plan in accordance with the plan provisions currently in force.  Accordingly, we hold that the 1993 amendment may not be applied retroactively to permit MSA to recoup payments made before the amendment was enacted.

III

MSA also contends it is entitled to recoupment as a matter of equity, asking this court to exercise its equitable powers to prevent unjust enrichment.  The courts are in some disarray on the circumstances in which the doctrine of unjust enrichment may be invoked with respect to claims arising under ERISA.  See, e.g., Provident Life & Accident Ins. Co. v. Waller, 906 F.2d 985, 992-93 (4th Cir. 1990) (discussing cases).  We have concluded that "the weight of authority supports the application of federal common law to ERISA disputes." Resolution Trust Corp. v. Financial Insts. Retirement Fund, 71 F.3d 1553, 1556 (10th Cir. 1995).  In so doing, however, we cautioned that "'the power [of the federal

courts] to develop common law pursuant to ERISA does not give carte blanche power to rewrite the legislation to satisfy [the court's] proclivities.' Instead, the courts must continue to implement the policies of ERISA." Id. (citation omitted).

We begin our consideration of the propriety of equitable relief by pointing out the hornbook rule that quasi-contractual remedies such as those MSA seeks are not to be created when an enforceable express contract regulates the relations of the parties with respect to the disputed issue. See 1 JOSEPH M. PERILLO, CORBIN ON CONTRACTS § 1.20, at 64-65 (rev. ed. 1993). Courts have recognized this principle and have stated their unwillingness to resort to the doctrine of unjust enrichment to override a contractual plan provision. See, e.g.,Singer v. Black & Decker Corp., 964 F.2d 1449, 1452 (4th Cir. 1992); Cummings v. Briggs & Stratton Retirement Plan, 797 F.2d 383, 390 (7th Cir. 1986); Van Orman v. American Ins. Co., 680 F.2d 301, 312 (3d Cir. 1982). Concomitantly, courts have held that enrichment is not unjust when authorized by an express provision of the plan. See Ryan v. Federal Express Corp., 78 F.3d 123, 127 (3d. Cir. 1996); Cummings, 797 F.2d at 390. Finally, courts have resorted to equitable federal common law principles only when to do so "would be consistent with ERISA's scheme and further its purposes." Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 280 (2d Cir. 1992); see also Ryan, 78 F.3d at 126 (application of

federal common law to ERISA claim appropriate only when necessary to effectuate the statutory pattern); Singer, 964 F.2d at 1452 (same).

These principles unequivocally indicate that consideration of the unjust enrichment doctrine would not be proper here. At the time the benefits at issue were paid by the plan, the beneficiaries had a contractual right to payment unburdened by any right to subrogation or recoupment. Application of the doctrine would therefore override an express contractual provision. Moreover, as we have noted, ERISA requires plan administrators to operate the plan in accordance with current plan documents. Allowing recoupment on the basis of an amendment not contained in the documents at the time of performance would be directly contrary to this statutory duty. Moreover, as one court has pointed out, "ERISA says nothing about subrogation provisions. ERISA neither requires a welfare plan to contain a subrogation clause nor does it bar such clauses or otherwise regulate their content." Ryan, 78 F.3d at 127. Resort to common law is thus not necessary to secure a statutory policy, because ERISA embodies no policy on the matter. Recourse to federal common law is improper when it would be used to rewrite ERISA rather than to implement its policies. Id. at 126; Financial Insts. Retirement Fund, 71 F.3d at 1556; Diduck, 974 F.2d at 281. We therefore reject MSA's argument that we apply federal common law to impose a right of recoupment under the circumstances here.

We **REVERSE** the judgment of the district court granting MSA a right to recoup the medical expenses it paid on behalf of the minor children, and **REMAND** the case for further proceedings in accordance with this opinion.