**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 20, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SARAH LEE GOSSETT PARRISH,

    Plaintiff - Appellant,

v.

ARVEST BANK,

    Defendant - Appellee.

No. 17-6042
(D.C. No. 5:15-CV-00913-HE)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **O'BRIEN**, and **BACHARACH**, Circuit Judges.
_____

    Sarah Lee Gossett Parrish appeals from the dismissal of her second amended class action complaint ("Complaint") for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand for further proceedings.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    Background

Parrish filed her Complaint against Arvest Bank on behalf of herself and all others similarly situated. She included claims for actual fraud, constructive fraud, false representation/deceit, breach of fiduciary duty, breach of contract, and unjust enrichment. In support of her fraud claims, she alleges Arvest made false or misleading statements in its Electronic Fund Transfer Agreement and Disclosure ("EFTA") and in certain marketing materials, which led customers to believe their transactions would be debited chronologically, i.e., in the order transactions are initiated (or in the case of checks, in the order they are presented). But, and contrary to the misrepresentations, Arvest actually posts all transactions in "batches" by transaction type at the end of each business day. She claims the batching process manipulates the posting order of transactions to maximize the number of insufficient funds and overdraft fees ("NSF/OD Fees") it imposes on customers. More specifically, she alleges the batching causes transactions to be posted in the following order: POS transactions,[1] other debit transactions, check transactions, ACH transactions,[2] and other types of transactions. Moreover, she claims transactions of the same type are not necessarily posted in chronological order within a batch.

---

[1] According to the EFTA, which Parrish attached to her Complaint, POS stands for "Point-of-Sale." Aplt. App., Vol. 2 at 251. A POS transaction occurs when a customer uses a CheckCard to purchase goods and services from a participating merchant. *See id.*

[2] ACH stands for "Automated Clearing House," a network through which bank customers can pay certain bills electronically. Aplt. App., Vol. 2 at 252.

In sum, Parrish claims Arvest's false and misleading statements regarding the chronological posting of transactions leaves its customers unable to determine (before initiating and completing a transaction) whether it will result in an NSF/OD Fee. She alleges generally that Arvest assessed one or more NSF/OD Fees on multiple occasions when her check register showed a positive balance, and she claims she would have incurred fewer NSF/OD Fees on other occasions had Arvest posted her transactions chronologically.

She also alleges fraud based on the account information Arvest displays via its online and mobile banking platforms, in which it misrepresents customers' account balances to be accurate, "real-time" balances, when they are actually inaccurate, "false" balances because of Arvest's posting process. She claims to have relied on inaccurate account balances in initiating and completing transactions and, as a result, incurred unexpected NSF/OD Fees.[3]

In addition to her fraud claims, Parrish alleges claims for breach of fiduciary duty, breach of the EFTA, and unjust enrichment based on the same factual allegations.

The district judge decided Parrish's Complaint fails to state a claim under Rule 12(b)(6) because: 1) her fraud claims do not allege with particularity any misrepresentation by Arvest that it posts transactions instantaneously or in

---

[3] Parrish clarifies that her fraud claims "do not challenge Arvest's chosen posting order, nor do they attempt to require Arvest to make particular disclosures to its customers." Aplt. Reply Br. at 11.

3

chronological order; 2) the facts she alleges in her fiduciary duty claim do not support a fiduciary relationship between Arvest and its customers; 3) her breach-of-contract claim is infirm because Arvest did not promise in the EFTA to provide account balances reflecting instantaneous posting, and she does not adequately plead facts supporting her general allegation that Arvest breached the implied covenant of good faith and fair dealing; and 4) her unjust enrichment claim does not state a plausible basis to infer that Arvest's conduct was unfair, unconscionable, and oppressive.

## II.     Discussion

We review de novo the dismissal of a complaint for failure to state a claim under Rule 12(b)(6). *George v. Urban Settlement Serv.*, 833 F.3d 1242, 1247 (10th Cir. 2016). "We accept a plaintiff's well-pleaded factual allegations as true and determine whether the plaintiff has provided enough facts to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "[A] claim is facially plausible if the plaintiff has pled factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). A putative class action complaint should be

4

dismissed if the named plaintiff's individual claims fail to state a claim for relief. *See Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1213 (10th Cir. 2006) (holding class-action allegations were properly dismissed where plaintiff failed to state a claim on his own behalf).

## A. Fraud Claims

A stricter pleading standard applies to Parrish's fraud claims. Under Fed. R. Civ. P. 9(b), "a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "More specifically, this court requires a complaint alleging fraud to set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000).

### 1. Alleged Misrepresentations Regarding Chronological Processing of Transactions

Parrish does not claim Arvest explicitly stated that it posts transactions chronologically, rather that it made misleading statements in the EFTA and in certain marketing materials, which created the false impression it does so, when in fact it does not—it batch posts transactions at the end of each business day.

She first points to the following statement in the EFTA: "Each time you use your CheckCard, the amount of the transaction will be debited from your designated account." Aplt. App., Vol. 2 at 252. Emphasizing the words "each time," she alleges that, although this statement "may or may not imply that the posting will be

5

instantaneous, it clearly does imply that transactions will be debited in the order in which they occur." *Id.* at 240. Moreover, she says, Arvest reinforced this implication in a pamphlet titled "How to Keep Good Bank Records" by advising customers to "enter every transaction as soon as possible." *Id.* at 230 (internal quotation marks omitted). She alleges that, by specifically telling customers "Check numbers do not always clear in numerical order or immediately," *id.* at 230-31 (internal quotation marks omitted), the pamphlet suggests other transactions do post chronologically.

The district judge concluded the statement in the EFTA about accounts being debited "each time" a customer uses a debit card "does not say or imply that the posting will be instantaneous," nor does the pamphlet suggest that non-check transactions are posted immediately or chronologically. *Id.* at 371. Parrish complains that the judge failed to view the facts she alleged in the light most favorable to her position and did not address her contention regarding chronological (as opposed to immediate) posting. When considered together, she urges, the EFTA and the pamphlet create a false impression that customers' accounts are debited in the order their transactions occur.

Arvest contends its "each time" statement in the EFTA addresses only the mechanics of how a CheckCard works, i.e., indicating that each POS transaction will result in a debit to the customer's account. It points to language in the pamphlet telling customers, "The debit card purchase amount may show one day as verification

6

and then will be processed as the actual purchase amount in one or more days and they may not be the same amount." *Id.* at 289.[4]

The district judge is correct: Parrish fails to allege a misrepresentation by Arvest. Her fraud allegations do not plausibly show what she claims: that the EFTA or the pamphlet actually represents that CheckCard or other transactions will be posted in chronological order. Her allegations are, at best, "merely consistent with" her claim that Arvest made false representations. *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). That is not enough and our saying so does not merely choose one plausible interpretation over another. Arguments about plausibility must be rationally based; they are not all equally meritorious.

Parrish relies heavily on *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 730 (9th Cir. 2012), in which the Ninth Circuit affirmed a holding that Wells Fargo violated California's unfair competition law "by making misleading statements likely to deceive its customers." We do not see the facts in *Gutierrez* as sufficiently similar to those presented here. There Wells Fargo posted debit-card purchases in the order of highest to lowest dollar amount, which increased the number of NSF/OD Fees

---

[4] Although Parrish did not attach a copy of the pamphlet to the Complaint, she did refer to it and the document is central to her fraud claims. Because Parrish has not disputed the authenticity of the pamphlet document Arvest submitted with its motion to dismiss, we consider that document as part of Parrish's Complaint. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.").

7

customers incurred. *See id.* at 716-17.[5] But contrary to its actual practice, Wells Fargo explicitly told customers in marketing materials that check card transactions "generally reduce the balance in your account immediately," "the money comes right out of your checking account the minute you use your debit-card," and POS purchases are deducted "immediately" or "automatically" from a customer's account. *Id.* at 729 (internal quotation marks omitted).

As Parrish readily acknowledges, she does not allege any such explicit representations by Arvest in the EFTA or the pamphlet regarding chronological posting. She nonetheless points to allegations in her Complaint similar to the facts recited in *Gutierrez*, in particular Arvest's display of transactions in chronological order via its online and mobile banking platforms and its advice to customers to maintain accurate check registers. In *Gutierrez*, the district judge found similar practices to have bolstered Wells Fargo's numerous explicit statements regarding immediate debiting of transactions. *See Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080, 1117 (N.D. Cal. 2010), *aff'd in part and rev'd in part by Gutierrez*, 704 F.3d at 730. But it did not rely on these practices alone in finding that Wells Fargo had "promoted a false perception that debit-card purchases would be deducted from [customers'] accounts in the order transacted." *Id.*; *see also id.* at 1116-17

_____

[5] In striking contrast, Parrish does not allege Arvest posts debit-card transactions in high-to-low order. She does claim check transactions have a higher median transaction value than ACH transactions, and that Arvest batch posts checks before ACH transactions. But she also alleges that Arvest posts POS and other types of debit transactions first, and she does not claim these types of transactions have a higher median transaction value than check or ACH transactions.

8

(listing numerous explicit statements by Wells Fargo regarding immediate balance reductions).

Moreover, Parrish also fails to allege facts demonstrating her reliance on any misrepresentation by Arvest regarding chronological posting. Under Rule 9(b), she must allege with particularity the "consequences" of Arvest's false statements. *Koch*, 203 F.3d at 1236; *see also George*, 833 F.3d at 1256 (holding allegations "identify[ing] the actions the plaintiffs took in reliance on [the] misrepresentations, [and] detail[ing] the injuries they suffered as a result" were sufficient to satisfy Rule 9(b)).

Here, she alleges only two specific instances in which she incurred unexpected NSF/OD Fees on her Arvest accounts. Her allegations regarding transactions on July 2-3, 2012, fail to show she would have incurred fewer fees had her transactions been posted chronologically. *See* Aplt. App., Vol. 2 at 232-34. Parrish now maintains these allegations are not intended to demonstrate her reliance. *See* Aplt. Reply Br. at 4. That leaves her allegations regarding an NSF/OD Fee she incurred on July 13, 2015. But these allegations also do not relate to Parrish's claim of reliance on chronological posting of transactions. *See* Aplt. App., Vol. 2 at 236-37. Nor are her other broad allegations regarding her reliance sufficient to satisfy Rule 9(b). *See Koch*, 203 F.3d at 1236-37 (affirming dismissal of fraud claims based on broad allegations that "set forth none of the specific and required allegations," *id.* at 1237).

9

### 2. Alleged Inaccurate and Unreliable Account Balances

Parrish also attempts to allege a fraud claim related to the account balance information available to customers through Arvest's online and mobile banking platforms. She alleges she believed, due to Arvest's misrepresentations, that it provided "real-time account balances" through these services. Aplt. App., Vol. 2 at 236. Parrish claims she initiated and completed transactions in reliance on these account balances, incurring unexpected NSF/OD Fees as a result.

To the extent she relies on alleged misrepresentations by Arvest regarding chronological posting, this claim fails for the reasons explained above. But Parrish also points to the following language in the EFTA:

> ONLINE & MOBILE BANKING – You may use your access code to perform the following functions through our internet banking or mobile banking solutions:
>
> - Initiate transfers of funds between your Arvest Bank accounts.
> - Check your Arvest Bank account balance(s), and the credits and debits that have posted to your accounts.

*Id.* at 252. She argues Arvest misrepresents through this language that it displays accurate account balances via its online and mobile banking systems when in fact it does not.

Once again, Parrish must allege a plausible fraud claim with particularity. According to the Complaint:

> [O]n July 8, 2015, Parrish mistakenly wrote a check from her bank account ending in 9398, believing she had done so from a different account. When she realized her error over the weekend, Parrish checked the balance reflected on Arvest's online banking system. It reflected that the check had not processed and there were sufficient funds in the account. Parrish relied

10

> on this representation, which ultimately proved to be false, and waited until the following Monday morning to deposit additional funds in the account. On Monday, July 13, 2015, Arvest's online banking system indicated that Arvest had in fact processed and posted the check prior to Parrish's deposit, contrary to the representation upon which Parrish relied over the weekend. As a result of this reliance, Parrish incurred an unexpected NSF/OD Fee.

*Id.* at 236-37. These fraud allegations do not survive a motion to dismiss. Parrish claims she checked her online balance once at some undisclosed point during a weekend, noting her check had not yet cleared. She alleges vaguely there were "sufficient funds" in her account at that time, but she does not say her check was the only transaction affecting the account. She states that she decided to delay—not forgo—making a deposit. Ultimately, Parrish fails to explain how Arvest's posting of her check at some point before she put more money in her account on the following Monday demonstrates that the online balance Arvest displayed over the weekend was "false" at that time. Parrish's allegations do not allege with specificity a plausible fraud claim against Arvest.

We affirm the district judge's dismissal of Parrish's fraud claims. She did not "nudge[]" these claims "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (internal quotation marks omitted).[6]

---

[6] Parrish's constructive fraud claim fails for the same reasons as her other fraud claims. Moreover, she does not allege facts supporting her two theories why Arvest had a duty to disclose information about its posting practices. She alleges no partial, misleading disclosure by Arvest giving rise to a duty to speak. Nor, as we explain next, does she allege facts supporting a finding that Arvest has a fiduciary relationship with its customers.

11

**B.      Breach of Fiduciary Duty**

Under Oklahoma law, a bank does not owe its customers fiduciary duties absent a written agreement:

> Unless a state or national bank shall have expressly agreed in writing to assume special or fiduciary duties or obligations, no such duties or obligations will be imposed on the bank with respect to a depositor of the bank . . . and no special or fiduciary relationship shall be deemed to exist.

Okla. Stat. tit. 6, § 425.  Parrish's breach-of-fiduciary-duty claim was dismissed because she failed to allege an express written agreement to assume such duties.  The judge also held her allegation of a special relationship between Arvest and its customers—based on Arvest's superior knowledge of its posting processes and its customers' lack of sophistication—failed as a matter of law.  *See First Nat'l Bank & Tr. Co. of Vinita v. Kissee*, 859 P.2d 502, 510-11 (Okla. 1993).

In support of her fiduciary duty argument Parrish points to Arvest's agreement in the EFTA to provide accurate, real-time account balance information through its online and mobile banking platforms.  Banks have always been expected to provide accurate account information, but that does not transform a creditor-debtor relationship between a bank and its customers into a special relationship giving rise to fiduciary duties, and we fail to see how the offering of what has now become routine banking services will do so.  Parrish has offered no contrary authority.  We see no error.

12

## C.    Breach of Contract

Parrish initially contends her Complaint states a claim for breach of the implied covenant of good faith and fair dealing.  She cites cases in which other courts have refused to dismiss implied-covenant claims with fact patterns similar to those she has alleged.  In particular, she notes her allegations regarding Arvest's posting process, its failure to fully inform customers regarding that process, and its misleading statements regarding chronological posting.  But she does not tether these allegations to anything Arvest agreed to do, but has not performed in good faith.  In the cases she relies on, the plaintiffs alleged that banks failed to exercise good faith in performing express contractual terms granting them discretion to post transactions in any order.  *See, e.g., In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1314-16 (S.D. Fla. 2010).  Since she does not point to any similar allegation in her Complaint she fails to demonstrate how the district judge erred in concluding her general allegation regarding Arvest's breach of the implied covenant is insufficient to state a claim under Rule 12(b)(6).

Parrish also alleges Arvest breached its agreement in the EFTA to provide accurate and reliable account balance information via its online and mobile banking platforms.  As noted above, the EFTA provides that, via these systems, customers can initiate transfers between their Arvest accounts, as well as check their "account balance(s), and the credits and debits that have posted to [their] accounts."  Aplt. App., Vol. 2 at 252.  She construes this language as an agreement to provide current, real-time balance information, which she claims Arvest breached by displaying

13

inaccurate account balances. By example, she alleges that Arvest does not instantaneously process transfers between Arvest accounts, even when it represents through a customer's online or mobile account balance it has done so. *See id.* at 236. And she claims to have relied on that inaccurate online and mobile account balance information in initiating and completing transactions. As a result, she overdrew her accounts and incurred unexpected NSF/OD Fees.

In dismissing this claim, the district judge incorporated the following reasoning from a previous dismissal order:

> The complaint asserts that Arvest breached the [EFTA] by providing inaccurate account balances, but it is not apparent what makes the balances inaccurate. Plaintiff's argument is essentially that an "accurate" balance is only one which reflects instantaneous posting of transactions. But the agreement promises no such thing and there is no apparent reason for concluding that transactions posted by size or some other batching process result in balances that are other than "accurate" for purposes of the agreement.

Aplt. App., Vol. 1 at 220.

But the EFTA tells customers they can use Arvest's online and mobile banking platforms to check their account balances and the credits and debits *that have posted to* their accounts. Parrish alleges, to the contrary, that account information Arvest makes available through its online and mobile banking platforms does not accurately reflect actual account balances. Her example of Arvest not carrying out an intra-bank transfer, while displaying the transfer as completed, illustrates how an online or mobile banking account balance could be inaccurate. Unlike her fraud claims, Parrish was not required to plead this claim with particularity. And her allegations

14

are not, as Arvest maintains, merely conclusory. Accepting her allegations as true and construing them in a light most favorable to her, she has alleged enough facts to plausibly state a facially valid claim to relief.

Arvest asserts the form agreements governing Parrish's use of its online and mobile banking platforms do not warrant these systems as error free and also disclaim liability for customers' reliance upon them. But Parrish's claim is based on the EFTA, which she attached to her complaint. She does not rely on or attach the other agreements Arvest cites. We do not consider these other agreements because "[o]ur role is to assess whether the plaintiff's complaint alone is legally sufficient to state a claim upon which relief may be granted." *U.S. ex rel. Sikkenga v. Regence BlueCross BlueShield of Utah*, 472 F.3d 702, 713 (10th Cir. 2006).

We affirm the district judge's dismissal of Parrish's claim asserting breach of the implied covenant of good faith and fair dealing, but reverse its dismissal of her claim asserting Arvest breached the EFTA by providing inaccurate account balance information to customers through its online and mobile banking platforms.

### D. Unjust Enrichment

Parrish asserts an unjust-enrichment claim as an alternative to her breach-of-contract claim. She first maintains this claim is based upon Arvest's alleged misrepresentations regarding chronological posting of transactions and the resulting increase in NSF/OD Fees Arvest imposes. Because she fails to allege a misrepresentation by Arvest regarding chronological posting, these allegations do not support a claim for unjust enrichment.

15

Parrish also asserts her unjust-enrichment claim is based on the allegedly false account balance information Arvest provides through its online and mobile banking platforms. We have affirmed dismissal of her fraud claim based on these allegations because she did not plead with particularity any false account balance information pertaining to her own accounts. But we have reversed the dismissal of Parrish's breach-of-contract claim based on inaccurate balance information displayed via Arvest's online or mobile banking systems. Under Oklahoma law, Arvest says, quasi-contractual remedies such as unjust enrichment are not available where an enforceable contract governs the parties' relationship. Parrish does not address this contention in her reply brief.

In Oklahoma "a party is not entitled to pursue a claim for unjust enrichment when it has an adequate remedy at law for breach of contract." *Am. Biomedical Grp., Inc. v Techtrol, Inc.* 374 P.3d 820, 828 (Okla. 2016).[7] We have cited "the hornbook rule that quasi-contractual remedies . . . are not to be created when an enforceable express contract regulates the relations of the parties with respect to the disputed issue." *Member Serv. Life Ins. Co. v. Am. Nat'l Bank & Tr. Co. of Sapulpa*, 130 F.3d 950, 957 (10th Cir. 1997) (citing 1 Joseph M. Perillo, Corbin on Contracts § 1.20 (rev. ed. 1993)). We applied this rule in a case where the plaintiff tried to allege an unjust-enrichment claim to recover unpaid royalties. *See Elliott Indus. Ltd. P'ship v.*

---

[7] This rule does not apply when a party is seeking to rescind the contract, *see Roberson v. PaineWebber, Inc.*, 998 P.2d 193, 200 (Okla. Civ. App. 1999), but Parrish does not seek to rescind the EFTA.

*BP Am. Prod. Co.*, 407 F.3d 1091, 1107-09 (10th Cir. 2005). We affirmed a summary judgment because "the claim for unpaid royalties is grounded in the parties' contractual relationship." *Id.* at 1117. Parrish presents no argument as to why this rule does not bar her unjust-enrichment claim. We therefore affirm the dismissal of her claim on that basis.

## III. Conclusion

The district court's judgment is affirmed in part and reversed in part. The case is remanded for further proceedings consistent with this order and judgment.

Entered for the Court


Terrence L. O'Brien
Circuit Judge

17