**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 24, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

LYN M.; DAVID M., as Legal
Guardians of L.M., a minor,

      Plaintiffs - Appellants,

v.

PREMERA BLUE CROSS;
MICROSOFT CORPORATION
WELFARE PLAN,

      Defendants - Appellees.

No. 18-4098

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:17-CV-01152-BSJ)**
_____

Brian S. King (Nediha Hadzikadunic and Brent J. Newton, with him on the briefs), Brian S. King, PC, Salt Lake City, Utah for Plaintiffs - Appellants.

Gwendolyn C. Payton, Kilpatrick Townsend & Stockton LLP, Seattle, Washington (John R. Neeleman, Kilpatrick Townsend & Stockton LLP, Seattle, Washington, and Adam H. Charnes, Kilpatrick Townsend & Stockton LLP, Dallas, Texas, with her on the brief), for Defendants - Appellees.
_____

Before **LUCERO**, **BACHARACH**, and **EID**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

The parents of a teenage girl (L.M.) sued Premera Blue Cross under the Employee Retirement Income Security Act (ERISA), claiming improper denial of medical benefits. The district court granted summary judgment to Premera, and the parents appeal. We conclude that the district court erred by

- applying the arbitrary-and-capricious standard and

- concluding that Premera had properly applied its criteria for medical necessity.

Given these conclusions, we reverse and remand to the district court for de novo reevaluation of the parents' claim.

## I.    The parents unsuccessfully sought reimbursement of L.M.'s residential treatment at Eva Carlston Academy.

L.M. has experienced mental illness since she was a young girl. At various times, her symptoms have included suicidal ideation, a suicide attempt, and self-harm. She has also struggled with focus, motivation, and school attendance, requiring her to attend therapy throughout most of her life.

L.M. was eventually placed in Eva Carlston Academy, where she obtained long-term psychiatric residential treatment. For this treatment, the parents submitted a claim to Premera under the ERISA plan's coverage for psychiatric residential treatment.

Premera denied the claim ten days into L.M.'s stay. But Premera agreed to cover the first eleven days of L.M.'s treatment, explaining the

2

temporary coverage as a courtesy. The parents appealed the denial of subsequent coverage, and Premera affirmed the denial based on a medical opinion by Dr. Paul Hartman.

The parents filed a claim for reimbursement of over $80,000 in out-of-pocket expenses for L.M.'s residential treatment at Eva Carlston Academy. Both parties moved for summary judgment, and the district court granted summary judgment to Premera based on two conclusions. First, the court concluded that Premera's decision was subject to the arbitrary-and-capricious standard of review. Second, the court concluded that Premera had not acted arbitrarily or capriciously in determining that L.M.'s residential treatment was medically unnecessary.

## II. We must apply both the ordinary summary-judgment standard and the standard for liability under ERISA.

We engage in de novo review of a district court's grant of summary judgment, using the same standard that applied in district court. *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 795–96 (10th Cir. 2010). As the movant, Premera bore the burden to show (1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law. *Owings v. United of Omaha Life Ins. Co.*, 873 F.3d 1206, 1212 (10th Cir. 2017). But the district court had to apply this dual burden consistently with ERISA, which contains "a distinct standard of review" for plan

administrators'[1] decisions. *Graham v. Hartford Life & Accident Ins. Co.*, 501 F.3d 1153, 1155 n.1 (10th Cir. 2007); *see LaAsmar*, 605 F.3d at 796 (stating that when reviewing a grant of summary judgment on an ERISA claim, the court of appeals must first determine the standard governing the insurer's denial of benefits).

Under ERISA, courts ordinarily conduct de novo review of a plan administrator's decision to deny benefits. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). But if a plan administrator enjoys discretionary authority under the plan, we apply a deferential standard, affirming the decision unless it is arbitrary and capricious. *LaAsmar*, 605 F.3d at 796.

**III.    The court must engage in de novo review of the denial of benefits because members lacked notice of the plan administrator's discretionary authority.**

The plan administrator claims that it provided members with notice of discretionary authority in a document called the "Plan Instrument." Although the Plan Instrument creates discretionary authority,[2] the members

---

[1]    The term "plan administrator" could arguably refer to either Microsoft (the ultimate plan administrator) or Premera (the delegated plan administrator). This distinction is irrelevant to our analysis, so we refer collectively to Premera and Microsoft as the plan administrator.

[2]    The Plan Instrument states:

The Plan Administrator shall have all powers necessary or appropriate to carry out its duties, including, without limitation,

4

had no way of knowing that the Plan Instrument even existed.[3] Because

members lacked notice of the Plan Instrument, it does not trigger arbitrary-

and-capricious review.

ERISA requires plan administrators to enable "beneficiaries to learn

their rights and obligations at any time." *Curtiss-Wright Corp. v.*

*Schoonejongen*, 514 U.S. 73, 83 (1995). To comply with this requirement,

> the sole discretionary authority to . . . interpret the provisions of
> the Plan and the facts and circumstances of claims for benefits
> . . . . Benefits under this Plan will be paid only if the Plan
> Administrator decides in his discretion that the claimant is
> entitled to them.

Appellants' App'x vol. 1, at 64–65.

[3]     The dissent contends that the parents are relying on a lack of notice
based on the plan administrator's failure to distribute the Plan Instrument
rather than a failure to provide notice about the Plan Instrument's
existence. The dissent's contention blurs two distinct arguments. The
parents first argue that the plan administrator failed to systematically
distribute the Plan. But the parents also argue that the plan administrator
failed to notify participants of the Plan Instrument's existence:

> Nothing in the Record demonstrates participants in the Plan even
> knew [the Plan Instrument] existed. Consequently, they were not
> provided fair notice of the limited ability they would have to
> obtain meaningful substantive review in litigation of any denied
> claims.

Appellants' Opening Br. at 32. The parents elsewhere point out that "[a]
document may contain discretionary authority language but if it was never
disclosed to Plan participants and beneficiaries, it cannot form the basis
for a deferential standard of review." *Id.* at 36. The parents are thus
arguing in part that they lacked notice of discretionary authority because of
the plan administrator's failure to disclose the Plan Instrument's existence.

plan administrators must create written plan documents and offer members an opportunity to examine those documents to "determine exactly what [their] rights and obligations are under the plan." *Id.* (quoting H.R. Rep. No. 93-1280, at 297 (1974), *reprinted in* U.S.C.C.A.N. 4639, 5077, 5078). Given the members' right to examine the documents, the plan administrator must make the documents "available for examination by any plan participant or beneficiary." 29 U.S.C. § 1024(b)(2).

To exercise this right, members must clearly identify whatever they want to examine. *Moothart v. Bell*, 21 F.3d 1499, 1503 (10th Cir. 1994). Of course, no member could clearly identify a document that the plan administrator has kept secret. So ERISA's procedure for inspection of plan documents assumes notice to members.

The need for notice is especially compelling for documents reserving discretionary authority to the plan administrator:

> It is critical that employees understand the broad range of a plan administrator's authority because of the impact that this information can have on employees' own decisions. For instance, as the Seventh Circuit has noted, employees may choose a particular employer based on their understanding of the insurance benefits provided by that employer, including whether any award of benefits is subject to a plan administrator's discretionary decision-making authority.

*Cosey v. Prudential Ins. Co. of Am.*, 735 F.3d 161, 167 (4th Cir. 2013); *see also Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 816 (7th Cir. 2002) ("Without . . . notice of the employer's intention 'to reserve a broad,

6

unchanneled discretion to deny claims,' the employee cannot make informed choices about his benefits, such as the decision as to whether he should supplement his ERISA plan with other forms of insurance.") (quoting *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 333 (7th Cir. 2000)).

Notice requires the plan administrator to disclose its discretionary authority or the existence of a document with information about the discretionary authority.[4] Without either form of notice, members cannot be bound by a reservation of discretionary authority inserted into some secret document locked away by the plan administrator. *See Member Servs. Life Ins. Co. v. Am. Nat. Bank & Tr. Co. of Sapulpa*, 130 F.3d 950, 955 (10th Cir. 1997) (noting that a plan member "could not be bound to terms of [a] policy of which he had no notice" (internal quotation marks omitted)) (quoting *Bartlett v. Martin Marietta Operations Support, Inc. Life Ins. Plan*, 38 F.3d 514, 517 (10th Cir. 1994)); *see also Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc.*, 813 F.3d 420, 428–29 (1st Cir. 2016) (holding that under ERISA, an agreement involving the participating employers could not be used against beneficiaries who lacked notice of the

---

[4]    The dissent argues that we are requiring notice of other documents affecting the scope of judicial review. But we aren't expressing an opinion on the need for notice as to other plan documents. We conclude only that a plan administrator must provide notice of documents reserving discretionary authority.

7

agreement). A plan administrator could otherwise retain discretionary

authority through a plan document without members having any reason to

know of the document's existence:

> An employer should not be allowed to get credit with its employees for having an ERISA plan that confers solid rights on them and later, when an employee seeks to enforce the right, pull a discretionary judicial review rabbit out of his hat. The employees are entitled to know what they're getting into, and so if the employer is going to reserve a broad, unchanneled discretion to deny claims, the employees should be told about this, and told clearly.

*Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 332–33 (7th Cir. 2000).[5]

Premera didn't disclose the Plan Instrument or tell members anything

that would have clued them in to the existence of this document. Instead,

Premera supplied a summary plan description, which members would

ordinarily regard as their primary source of information about the plan. *See*

---

[5]     The dissent argues that we have misapplied *Herzberger*, stating that there the court held that where discretion is reserved, the *language* reserving that authority must be clear. *See Herzberger*, 205 F.3d at 332. By contrast, the dissent contends, we are opining on the requirement for employers to provide *notice* of a plan administrator's reservation of discretionary authority. Dissent at 4, 4 n.1, 6 n.3. But we've simply applied *Herzberger*'s command for clarity when the plan administrator asserts discretionary authority in a plan document. *See Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635, 637 (7th Cir. 2005).

The plan administrator either disclosed the Plan Instrument's existence or it didn't. If it didn't, how could members have notice of the plan administrator's reservation of discretionary authority? In our view, members lack notice when the plan administrator reserves discretionary authority in a private document without disclosing the document's existence. Members cannot obtain notice from secret documents.

*Heidgerd v. Olin Corp.*, 906 F.2d 903, 907 (2d Cir. 1990) ("[ERISA] contemplates that the summary [plan description] will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary."). But the summary plan description said nothing about the existence of the Plan Instrument or any other plan document reserving discretion to the plan administrator.

The summary plan description did say: "You may ask to examine or receive free copies of all pertinent plan documents, records, and other information relevant to your claim by asking Premera." Appellants' App'x vol. 4, at 950. In context, however, this sentence did not suggest the existence of another document affecting judicial review. The sentence appeared in a section addressing Premera's internal review—not in a section addressing judicial review over Premera's decisions. *Id.* at 949–50. And any number of documents might be "pertinent" or "relevant" to a member's claim. *Id.* at 950. So even if members had discovered this sentence, they would have lacked any reason to suspect the existence of other documents involving the scope of judicial review.

The summary plan description did discuss judicial review in another section entitled "Limits on your right to judicial review." *Id.* at 953. But that section said nothing about

- the existence of discretionary authority or other plan documents or

- the possibility that undistributed, inspectable documents could affect the scope of judicial review.[6]

So Premera did not adequately notify the parents of this possible limit on the scope of judicial review. Because the parents "could not be bound to terms of [a] policy of which [they] had no notice," the Plan Instrument does not affect the standard for reviewing Premera's decision. *Member Servs. Life Ins. Co. v. Am. Nat. Bank & Tr. Co. of Sapulpa*, 130 F.3d 950, 955 (10th Cir. 1997) (internal quotation marks omitted) (quoting *Bartlett v. Martin Marietta Operations Support, Inc. Life Ins. Plan*, 38 F.3d 514, 517 (10th Cir. 1994)).[7]

---

[6]     The section addressing judicial review states in its entirety:

Limits on your right to judicial review

You must follow the appeals process described above through the decision on the appeal before taking action in any other forum regarding a claim for benefits under the plan. Any legal action initiated under the plan must be brought no later than one year following the adverse determination on the appeal. This one-year limitations period on claims for benefits applies in any forum where you initiate legal action. If a legal action is not filed within this period, your benefit claim is deemed permanently waived and barred.

Appellants' App'x vol. 4, at 953.

[7]     The dissent asserts that we are establishing a "back door" requirement for distribution by insisting that plan administrators notify members of documents addressing discretionary authority. Dissent at 5–7.

10

Premera has not shown that it provided notice of its reservation of discretionary authority. The district court thus erred in applying the arbitrary-and-capricious standard of review to the denial of benefits; the court should have instead engaged in de novo review. *See Rodríguez-López v. Triple-S Vida, Inc.*, 850 F.3d 14, 20 (1st Cir. 2017) (stating that the arbitrary-and-capricious standard applies only "[i]f the plan gives the plan participant or covered beneficiary adequate notice of [a reservation of discretionary authority]").[8]

## IV. The district court also erred by concluding that Premera had correctly applied the criteria for medical necessity.

The district court erred not only in applying the arbitrary-and-capricious standard, but also in misinterpreting Premera's letter denying relief to the parents in their administrative appeal. This misinterpretation

---

We respectfully disagree. A notice requirement need not include distribution. Of course, awareness of documents bearing on the standard of review might lead members to request those documents. But the possibility that members might request documents does not turn the need for notice into a distribution requirement.

[8] The parents also urge de novo review based on (1) the absence of the Plan Instrument in the administrative record and (2) the alleged violation of procedural requirements. We need not address these arguments because the failure to provide notice of the Plan Instrument independently requires de novo review.

of the letter would require reversal even if the arbitrary-and-capricious standard had otherwise applied.[9]

The district court concluded that Premera had properly assessed the issue of medical necessity based on the summary plan description and a separate medical policy (entitled "Behavioral Health: Psychiatric Residential Treatment"). In reaching this conclusion, the court pointed out that the medical policy "articulates the criteria to be used when assessing the need for psychiatric residential treatment." Appellants' App'x vol. 1, at 235. All parties agree that the determination of medical necessity must be based on *both* the summary plan description's general criteria and the medical policy's specific criteria.

But Premera did not apply the medical policy's specific criteria when deciding the parents' administrative appeal. In the administrative appeal, Premera relied solely on the summary plan description's general criteria. Premera thus failed to consider the medical policy's specific criteria, such

---

[9] This case presents two independent reasons for reversal. We have concluded that the district court

- should have applied de novo review and

- erred in concluding that Premera had correctly applied the criteria for medical necessity.

The dissent would affirm the district court but expresses disagreement only with the first reason. The dissent doesn't say whether it agrees or disagrees with our second, independent ground for reversal. The second reason alone would require reversal.

as significant impairment of "functioning or behavioral dyscontrol . . . at a severity that requires 24/7 containment and treatment." *Id.* vol. 4, at 885.

Premera insists that it applied the medical policy, but Premera is mistaken. In the administrative appeal, Premera told the parents that it was denying the claim based "*on the plan*, which specifically excludes benefits for services or supplies that are not medically necessary." *Id.* at 824 (emphasis added). By itself, the phrase "on the plan" could be ambiguous, referring to the summary plan description, the medical policy, or both. But any ambiguity vanishes in a section entitled "Plan Language," which states: "The specific plan provisions for which the denial of this appeal is based on is as follows . . . ." *Id.* at 825. What follows is the summary plan description's definition of what is "medically necessary." *Id.* Nowhere in this section (or the rest of the letter) does Premera discuss the medical policy.

Premera took a similar approach in corresponding with Dr. Paul Hartman, a physician certified in child and adolescent psychiatry. Dr. Hartman was asked to review the denial of benefits and opine about the necessity of residential treatment. To facilitate this review, Premera sent Dr. Hartman a copy of the medical policy but told him that it "should not be used as the basis for the determination of this review." Appellants' App'x vol. 2, at 423. Dr. Hartman complied, basing his opinion on the summary plan description and disregarding the medical policy. *Id.*

13

at 422-23. Premera thus relied on a medical opinion that had disregarded the medical policy's specific criteria.[10]

Premera's letters show a failure to apply the medical policy's criteria. By failing to use the medical policy's criteria, Premera acted arbitrarily and capriciously. *See Owings v. United of Omaha Life Ins. Co.*, 873 F.3d 1206, 1212–13 (10th Cir. 2017) (holding that a plan administrator acted arbitrarily and capriciously by misinterpreting and misapplying the plan document's definition of a "disability").

## V. We remand for the district court to engage in de novo review of Premera's decision.

We have concluded that (1) the district court erred in adopting a deferential standard of review and (2) Premera applied the wrong criteria in denying the parents' administrative appeal. Given these conclusions, we must determine the appropriate remedy. We can

- remand to the plan administrator for further administrative review,

- remand to the district court to conduct de novo review of the plan administrator's decision, or

---

[10] At oral argument, Premera framed its instructions to Dr. Hartman differently. *See* Oral Arg. at 23:52–24:09 ("They [Premera] ask [Dr. Hartman] . . . is it correct *under the Medical Policy and the Plan*, what we have done? He says yes." (emphasis added)). Premera had actually told Dr. Hartman that "[t]he medical policy . . . should not be used as the basis for the determination of [his] review." Appellants' App'x vol. 2, at 423. Premera did ask Dr. Hartman to review the medical policy, but only to compare it to the general standards of care. *Id.*

14

- apply de novo review in the first instance.

*See Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1327 (10th Cir. 2009) (considering whether to remand to the plan administrator or to the district court); *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1175–76 (10th Cir. 2006) (considering whether to remand to the plan administrator or to award benefits).

The parents seek a remand for the district court to conduct de novo review of Premera's decision. Oral Arg. at 30:35–30:55. We agree that this is the appropriate remedy. *See Rasenack*, 585 F.3d at 1327 (remanding to the district court instead of the plan administrator when the plan administrator "had its chance to exercise its discretion and it failed to do so in accordance with the clear guidelines of the Plan and ERISA"). This remedy maximizes the district court's discretion to decide the next steps.[11]

---

[11]    To aid the district court on remand, we note two potential evidentiary issues.

First, we have discussed the instructions given to Dr. Hartman as evidence of Premera's sole reliance on the summary plan description's general criteria. But we do not express an opinion on the persuasiveness of Dr. Hartman's report under the medical policy's criteria.

Second, the district court has noted that

- L.M. dropped out of school and participated instead in an alternative "homebound" schooling program and

- her "participation in [the homebound] program ultimately stopped as well." Appellant's App'x vol. 1, at 224.

15

Premera urges us instead to apply de novo review in the first instance. In our view, however, the district court should first apply de novo review. When the district court has not reached a required issue, we typically permit that court to tackle the issue in the first instance. *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1290 (10th Cir. 2011). This approach is particularly apt here given the fact-intensive nature of the inquiry. *See Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1327 (10th Cir. 2009) (remanding to the district court and recognizing its role in reviewing "complex medical questions or issues regarding the credibility of medical experts" (internal quotation mark omitted)) (quoting *Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1203 (10th Cir. 2002)); *see also Seman v. FMC Corp. Ret. Plan for Hourly Emps.*, 334 F.3d 728, 733–34 (8th Cir. 2003).[12]

---

But the external reviewer wrote that L.M. "was attending" the homebound program, implying that she had not dropped out. *Id.* vol. 4, at 1065. The reviewer may have based this statement on a medical record created by Eva Carlston Academy. *See Id.* vol. 5, at 1143, 1145. We express no opinion on the possibility of a mistake in the external review or the significance of this possible mistake.

[12]      In *Seman*, the Eighth Circuit stated:

       Having determined that [the plan administrator's] denial of [the member's] application for benefits should be reviewed de novo, we conclude that such review should be conducted in the first instance by the district court, rather than by this court. We believe that remanding this case to the district court is the wiser

16

In conducting this fact-intensive inquiry, the district court can explore options unavailable to us, such as conducting a bench trial or permitting additional evidence. *See Hall*, 300 F.3d at 1202 (holding that district courts may admit or solicit new evidence "when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision" (internal quotation marks omitted)) (quoting *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir. 1993) (en banc)); *see also McKeehan v. Cigna Life Ins. Co.*, 344 F.3d 789, 793 (8th Cir. 2003).[13] We thus remand for the district court to conduct de novo review in the first instance.

---

approach because the review of the plan administrator's denial of benefits is a highly fact-intensive inquiry which may, in the district court's sound discretion, be based on evidence beyond that presented to the administrator.

334 F.3d at 733–34.

[13] In *McKeehan*, the court explained:

When the de novo standard of review applies, a district court has more discretion to allow the parties to introduce evidence in addition to that submitted to the plan decision-maker. In addition, in conducting de novo review, the district court may wish to make findings of fact after a bench trial or on a stipulated fact record, rather than conducting the summary judgment review that is customary when applying the abuse-of-discretion standard.

344 F.3d at 793 (citation omitted).

\* \* \*

We reverse the district court's grant of summary judgment to Premera and remand for de novo reconsideration of the parents' claim.

*Lyn M., et al. v. Premera Blue Cross, et al.*, No. 18-4098

**EID**, J., dissenting.

Today the majority imposes a new duty on plan administrators to notify members "that undistributed, inspectable documents could affect the scope of judicial review." Maj. op. at 10. I disagree with this holding. This new duty placed on plan administrators—to specifically inform members that documents exist that could affect judicial review—is supported neither by the language of ERISA nor our caselaw; it is of the majority's own making. Here, the summary plan description ("SPD") states that members "may ask to examine or receive free copies of all pertinent plan documents, records, and other information relevant to your claim by asking [the plan administrator]." This is sufficient to satisfy the only relevant duty imposed by ERISA here, which is to make a plan "available," and to furnish documents upon request of a plan participant. *See* 29 U.S.C. § 1024(b)(2), (4). As the majority plainly concedes, the Plan Instrument in this case states that the plan administrator has the "sole discretionary authority" regarding claims. Maj. op. at 4 & n.2. Accordingly, we must affirm the administrator's decision unless it is arbitrary and capricious. *See Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1130 (10th Cir. 2011). The majority instead remands the case to the district court for application of de novo review. For this reason, I respectfully dissent.

There is no statutory duty under ERISA to specifically notify participants of documents that may affect the judicial standard of review of their claims. Rather, ERISA only requires a plan be "ma[d]e available." 29 U.S.C. § 1024(b)(2); *see Curtiss-Wright*

*Corp. v. Schoonejongen*, 514 U.S. 73, 84 (1995) ("ERISA requires that every plan administrator make available for inspection . . . all currently operative, governing plan documents." (citing 29 U.S.C. § 1024(b)(2))). Here, the SPD informed plan participants that: "You may ask to examine or receive free copies of all pertinent plan documents, records, and other information relevant to your claim . . . ." Maj. op. at 9. This language, on its face, puts plan participants on notice that other documents could exist and be "relevant to [their] claim," and therefore satisfies the dictates of ERISA.

The majority rejects this approach, however, explaining instead that "Premera didn't disclose the Plan Instrument . . . ." *Id.* at 8; *see also id.* at 7 (suggesting that the Plan Instrument was a "secret document locked away by the plan administrator"); *id.* at 8 (suggesting that plan participants lacked notice because "Premera didn't . . . tell members anything that would have clued them in to the existence of this document."). Indeed, the majority finds that the above-quoted language from the SPD, explaining that "all pertinent documents" may be requested by a plan participant, is too broad because it fails to specifically "suggest the existence of another document affecting judicial review." *Id.* at 9. As the majority puts it, plan participants must be notified that "undistributed, inspectable documents *could affect the scope of judicial review*." *Id.* at 10 (emphasis added). Thus, the majority's approach requires a plan administrator to not only notify members that other documents may exist that might be relevant to their claims, but also to specifically notify them that those other documents may impact review of their claim in the courts.

2

The fundamental problem with the majority's opinion is that its new notification requirement is not supported by ERISA or our caselaw. The majority cites no statutory language, in ERISA or elsewhere, that imposes a duty on plan administrators to specifically notify members that documents exist that might affect judicial review. The majority cannot cite to a statutory requirement in ERISA's text for this proposition because one does not exist. Under ERISA's disclosure and reporting requirements provision, the statute requires the plan administrator "furnish[]" "(1) a summary plan description," and "(2) the information described in [section 1021(f)], and sections 1024(b)(3) and 1025(a) and (c) of this title." *See* 29 U.S.C. § 1021(a). ERISA contains a list of the required elements to craft a compliant SPD, but nowhere does that list include notifying participants of the applicable standard of review of their claims. *See* 29 U.S.C. § 1022 (listing requirements for an ERISA-compliant SPD). And the other statutorily-required disclosures referenced above pertain to the plan's funding and financial data, §§ 1021(f), 1024(b)(3), and annual or quarterly benefit statements of an individual's plan assets, § 1025(a), (c). Today, the majority adds an additional requirement to a plan administrator's disclosure duties under ERISA. *Compare* 29 U.S.C. § 1021(a), *with* Maj. op. at 3–11.

The majority cites only one Tenth Circuit case for this notification requirement—*Member Services Life Insurance Co. v. American National Bank & Trust Co. of Sapulpa*—which stands for the proposition that a plan member "could not be bound to terms of [a] policy of which he had no notice." 130 F.3d 950, 955 (10th Cir. 1997) (quoting *Bartlett v. Marietta Operations Support Life Ins.*, 38 F.3d 514, 517 (10th Cir.

3

1994)); *see* Maj. op. at 7, 10.  I have no quarrel with this general proposition of contract law, nor with its application in *Member Services*, which found that a plan member could not be retroactively bound by an amendment that occurred after expenses were incurred and paid.  But what I do disagree with is the leap from the proposition that members must be notified that other relevant documents exist and are available upon request, to the very specific requirement that they be notified those documents could affect judicial review.  In my view, *Member Services* simply cannot bear the weight the majority places on it.

The majority's reliance on out-of-circuit caselaw fares no better.  For example, the majority cites to *Herzberger v. Standard Insurance Co.*, 205 F.3d 327, 332–33 (7th Cir. 2000), for the proposition that "if the employer is going to reserve a broad, unchanneled discretion to deny claims, the employees should be told about this, and told clearly."  Maj. op. at 8.  But here, the majority confuses ERISA's notification requirements regarding the availability of pertinent documents with the Supreme Court's judicially-created standard for reserving discretionary authority under a plan.[1]  *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Eugene S.*, 663 F.3d at 1130–31 (discussing requirements for reserving discretionary review).  There is no question that

---

[1] The majority opinion exhibits the same confusion in citing *Rodriguez-López v. Triple-S Vida, Inc.*, 850 F.3d 14, 21 (1st Cir. 2017).  Maj. op. at 11.  Much like *Herzberger*, 205 F.3d at 332, *Rodriguez-López* holds that where discretion is purportedly reserved, the *language* reserving that authority must be clear.  *See Rodriguez-López*, 850 F.3d at 21 ("A careful review of the *language of the Plan* leads us to conclude that it does not reflect a clear grant of discretionary authority . . . ." (emphasis added)).  The case does not stand for the proposition that a document must contain a specific reference to the existence of *another* document affecting judicial review.

4

the Plan Instrument in this case reserves discretionary authority under *Eugene S.*. Maj. op. at 4 & n.2 (noting that "the Plan Instrument creates discretionary authority"); *see also Lyn M. v. Premera Blue Cross*, 2018 WL 2336115 at \*4 (D. Utah 2018) (unpublished) (holding that the language, which states that the administrator has "sole discretionary authority," is sufficiently clear). The question in this case is whether notice of that reservation of discretionary authority complied with ERISA, which, in my view, it did.

Significantly, not even the appellants argued for the new notification requirement the majority now imposes. The majority spends a good deal of time arguing that the appellants did in fact contend that notice was lacking in this case. Maj. op. at 5-6 & n.3. However, the appellants never argued that notice was insufficient due to lack of specific language in the governing documents regarding judicial review. In other words, they never argued that they did not receive notice because the plan language failed to state in specific terms that there existed undistributed plan documents *that could impact judicial review*—that is, the majority's holding today. Instead, in each instance of mentioning notice, the appellants argued that the plan documents failed to give notice because those documents *were not distributed.*[2] But there is no distribution requirement under ERISA.

---

[2] The majority is correct that appellants label this subsection of their argument using "fair notice" language, Maj. op. at 5 n.3, but the substance of the subsection that follows makes clear their complaints about "notice" are reserved to the lack of distribution. *See* Appellants' Brief at 32–36; *id.* at 34 (making a document "available . . . is not the same thing as stating the Plan Instrument was *distributed* to all participants . . . ."); *id.* at 35 ("Thus, the 'Plan Instrument' was *not routinely distributed* to the participants . . . of the Plan."). The appellants are clearly focused on the failure to *distribute* the Plan Instrument. They never make the argument that the SPD was required to contain a specific notification of other documents with potential effects on judicial review.

*See* 29 U.S.C. § 1024(b)(2), (4). Whether an undistributed document may reserve

discretionary authority is an open question in this and other circuits.[3] If we are to address

that question, however, we should do it head-on, rather than through the back door of

notification.

---

³ The First Circuit has come the closest to imposing a distribution requirement for documents relating to judicial review. See Maj. op. at 7 (citing *Stephanie C. v. Blue Cross Blue Shield of Mass.*, 813 F.3d 420 (1st Cir. 2016)). However, there, the undistributed document was not the governing plan instrument that explained the terms of available benefits, but rather the premium account agreement that defined the relationship between the employer and Blue Cross Blue Shield. *Id.* at 423, 427. Further, it was an alternative holding, given the court declined deferential review because the language of the Certificate (the governing plan instrument) was ambiguous and the account agreement could not "cure" it. *See id*. at 427–29.

The majority opinion also cites the Seventh Circuit's decision in *Herzberger*, 205 F.3d at 332–33, twice for the proposition that undistributed documents cannot affect the standard of review. Maj. op. at 7–8. It is true that *Herzberger* explains employees should have adequate notice if "the plan administrator is to make a judgment largely insulated from judicial review by reason of [their actions] being discretionary." 205 F.3d at 332. But first, as explained above, *Herzberger* is not about undistributed documents, it is about unclear language; the issue before the court was whether the language noting the plan administrator would pay benefit claims "upon proof (or satisfactory proof)" was sufficiently discretionary as to overcome de novo review. *Id.* at 329. And second, the *Herzberger* Court actually went so far as to draft suggested "safe harbor" language that, if used, would defeat any claim for de novo review. *Id.* at 331. The holding was that discretionary language, if used, must be clear.

The Second Circuit distinguished *Herzberger* on just these grounds in *Thurber v. Aetna Life Insurance Co.*, 712 F.3d 654, 659 (2d Cir. 2013) (noting *Herzberger* "did not in any way involve . . . a situation in which the plan's language *did* unambiguously provide for discretion, but the employee . . . had not received a copy of either document"), *abrogated on other grounds by Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. ___, 136 S. Ct. 651 (2016). As *Thurber* concluded, "the administrator of an ERISA plan has no obligation to ensure that participants receive copies of the plan itself." *Id.*

Of greatest concern is the fact that the majority's newfound notification requirement lacks a limiting principle. The logic of today's opinion could require, for example, specific notice of a document that might impact claims processing procedures, or to cite another example, a document that might impact how coverage decisions are made. Once specific notice of a document impacting judicial review is required, it is but a short jump to requiring specific notice of documents impacting other participant rights. The majority's approach thus violates the fundamental tenet of ERISA to impose uniform and clear duties upon plan administrators. *See Aetna Health v. Davila*, 542 U.S. 200, 208 (2004) ("The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans.").

Because the plan administrator failed to discharge this newly-imposed duty to specifically inform members that other documents could impact their right to judicial review, the majority refuses to apply the Plan Instrument,[4] which plainly states that the plan administrator has the "sole discretionary authority" regarding claims. When a plan administrator reserves such discretion, we must affirm its decision unless it is arbitrary and capricious. *Eugene S.*, 663 F.3d at 1130. The majority instead reverses the district

---

[4] I would affirm the district court's decision to allow supplementation of the administrative record with the Plan Instrument on the ground that it implicates the standard of review. *Lyn M.*, 2018 WL 2336115, at *4 (citing *Weeks v. Unum Grp.*, 585 F. Supp. 2d 1305, 1314 (D. Utah 2008)); Appellants' Appendix v.1 at 229; *see also Waldoch v. Medtronic, Inc.*, 757 F.3d 822, 830 (8th Cir. 2014) (The "general rule [against supplementing the record] is relaxed when evidence is admitted for the limited purpose of determining the proper standard of review." (citation omitted)); *cf. Eugene S.*, 663 F.3d at 1129 (holding supplementation of the record "is allowed for assessing dual-role conflict of interest claims").

court's decision upholding the administrator's decision made in this case and remands for application of de novo review.[5]  For this reason, I respectfully dissent from its opinion.

---

[5] The majority contends this matter can be decided on "two independent" grounds, and that "[t]he second reason alone"—that is, whether the appropriate criteria for medical necessity criteria were applied—"would require reversal."  Maj. op. at 12 n.9.  I disagree. In my view, it is necessary to resolve the standard of review question before reaching the merits.