**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 5, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LYN M.; DAVID M., as Legal Guardians
of L.M., a minor,

     Plaintiffs - Appellants,

v.

PREMERA BLUE CROSS; MICROSOFT
CORPORATION WELFARE PLAN,

     Defendants - Appellees.
-----------------------
AMERICAN BENEFITS COUNCIL,

     Movant.

No. 18-4098
(D.C. No. 2:17-CV-01152-BSJ)
(D. Utah)

_____

**ORDER**
_____

Before **BRISCOE**, **LUCERO**, **HARTZ**, **HOLMES**, **BACHARACH**, **PHILLIPS**,
**MORITZ**, **EID**, and **CARSON**, Circuit Judges[*][†]
_____

This matter is before us on the *Petition for Panel Rehearing and Rehearing En*

*Banc* filed by Premera Blue Cross ("Premera"). We also have a response from Appellant.

---

    [*]The Honorable Timothy M. Tymkovich, the Honorable Scott M. Matheson, and
the Honorable Carolyn B. McHugh are recused and did not participate in the
consideration of the rehearing petition.
    [†]Although the Honorable Mary Beck Briscoe and the Honorable Carlos F. Lucero
took senior status prior to the entry of this order, voting in the poll called on the rehearing
petition was completed while they were in active status.

Pursuant to Federal Rule of Appellate Procedure 40, Premera's request for panel rehearing is denied by a majority of the original panel members. Judge Eid would grant panel rehearing.

Both the petition and the response were transmitted to all non-recused judges of the court who are in regular active service. A poll was called and did not carry. Consequently, Premera's request for en banc rehearing is denied pursuant to Federal Rule of Appellate Procedure 35.

Judges Hartz, Eid and Carson would grant en banc rehearing. Judge Bacharach has filed a separate concurrence in support of the denial of en banc rehearing, which is joined by Judges Briscoe and Lucero. Judge Eid has filed a separate dissent, which is joined by Judges Hartz and Carson.

The American Benefits Council's motion for leave to file an amicus curiae brief in support of Premera's rehearing petition is granted.

Entered for the Court,

CHRISTOPHER M. WOLPERT, Clerk

*Lyn M., et al. v. Premera Blue Cross, et al.*, No. 18-4098
**BACHARACH**, J., concurring in the denial of en banc rehearing, joined by
**BRISCOE**, J., and **LUCERO**, J.

Our dissenting colleague urges en banc consideration, expressing concern that the panel majority has "imposed a new duty of ERISA plan administrators to notify plan members 'that undistributed, inspectable documents could affect the scope of judicial review.'" Dissent from Denial of En Banc Rehearing at 1 (*quoting Lyn M. v. Premera Blue Cross*, 966 F.3d 1061, 1067 (10th Cir. 2020) (Eid, J. dissenting)). This concern reflects a misconception of the panel opinion.

1.    **The panel opinion does not expand a plan administrator's duties under ERISA.**

The panel never addressed a plan administrator's duty under ERISA to notify members about a plan's provisions. The majority instead addressed only (1) the standard of review when a member sues and (2) the plan administrator's error under any standard of review by failing to apply the medical policy's criteria. Our dissenting colleague addresses the first issue, having expressed no opinion in her panel dissent on the second issue.

That standard of review comes from federal common law, not ERISA. *See Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 632 (10th Cir. 2003) ("Because ERISA is silent with respect to the standard of review, the court [in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101 (1989)] looked to

applicable common law principles to decide the question."). Under the federal common law, a reservation of discretionary authority requires notice to plan participants. *See, e.g.*, *Rodriguez-Lopez v. Triple-S Vida, Inc.*, 850 F.3d 14, 20 (1st Cir. 2017) (stating that the arbitrary–and–capricious standard applies "[i]f the plan gives the plan participant or covered beneficiary adequate notice of [a reservation of discretionary authority]").

The plan administrator packed discretion into a document called the "Microsoft Corporation Welfare Plan." But this document was never mentioned in any of the materials supplied to participants. So they had no way of knowing that this document existed.

Our dissenting colleague argues that participants could have learned about the Microsoft Corporation Welfare Plan by asking to examine any documents relevant to the claims. But how would participants have known to ask for this document? The summary plan description never mentioned the existence of the Microsoft Corporation Welfare Plan (the document providing for discretionary authority) or suggested that another document existed that might reserve discretionary authority. And even if a participant had requested examination of all relevant documents, the request may have lacked enough specificity to trigger production of any documents. *See Lyn M. v. Premera Blue Cross*, 966 F.3d 1061, 1066 (10th Cir. 2020) (stating

2

that to exercise the right to examine plan documents, participants "must clearly identify whatever they want to examine").

The panel majority thus concluded that the plan administrator had not provided notice of the reservation of its discretionary authority. *Lyn M. v. Premera Blue Cross,* 966 F.3d 1061, 1068 (10th Cir. 2020). Given the lack of notice, the panel majority determined that on remand, the district court should conduct de novo review of the denial of plan benefits. *Id.*

Our dissenting colleague disagrees, chiding the panel majority for expanding the plan administrator's statutory duties to provide notice. But the majority has not addressed the plan administrator's statutory duties to provide notice. Given the absence of any discussion of the issue, the panel majority could not possibly have expanded the plan administrator's statutory duties.

The panel opinion simply holds that

- the federal common law's arbitrary–and–capricious standard of review applies only if participants obtain notice of the plan administrator's discretionary authority,

- notice requires at least something that would alert participants to the existence of a document reserving discretion to the plan administrator, and

- such notice was absent here.

This case–specific, fact–bound opinion does not expand a plan administrator's duties under ERISA.

3

**2.**   **The panel appropriately considered existing case law to determine whether the plan administrator can furnish notice through a secret document containing clear language.**

Our dissenting colleague also criticizes the panel majority for relying on cases addressing the sufficiency of notice as to discretionary authority. As our colleague notes, other circuits have held that the nature of discretionary authority requires clarity in the plan language. But our circuit is the first to consider whether notice exists when clear plan language exists in a document that participants would have no way of knowing about.

Clear language of discretionary authority meant little if participants had no way to know that the document even existed. If notice is required through clear language, surely this clear language cannot be packed into a secret document.

**3.**   **The panel opinion does not conflict with the Second Circuit's opinion in *Thurber*.**

Our dissenting colleague also contends that the panel opinion conflicts with *Thurber v. Aetna Life Insurance Co.*, 712 F.3d 654 (2d Cir. 2013). I respectfully disagree. In *Thurber,* a plan participant argued that de novo review was warranted because she had not received plan documents giving discretion to the plan administrator. 712 F.3d at 659. The Second Circuit rejected the argument for de novo review based on a lack of actual notice. *Id.* at 659–60.

4

Here the panel opinion never addressed the need for actual notice of documents providing for discretion. Instead the issue was whether the plan administrator could provide notice through a secret document. That issue had not existed in *Thurber*. There the participant had acknowledged that the summary plan description (a document required by ERISA itself) reserved discretionary authority to the plan administrator. *Id.* at 658; *see* 29 U.S.C. § 1022(a) (requiring the summary plan description to be furnished to participants). The participant in *Thurber* argued that she had not received a copy of the summary plan description, not that she had no way of knowing about the existence of this document. The Second Circuit did not address the situation presented to our panel, where participants had no way of knowing about the document reserving discretion.

Under the reasoning of the panel opinion here, the plan administrator could easily provide notice by informing participants that their rights and responsibilities were governed by the Microsoft Corporation Welfare Plan. That's a far cry from requiring actual notice of the plan administrator's discretionary authority.

**4.     The panel opinion doesn't create a slippery slope, devoid of limiting principles.**

Our dissenting colleague also expresses concern that the panel opinion will create a slippery slope without limiting principles to prevent expansion of plan administrators' duties to provide notice. For example,

our colleague fears that the panel opinion could lead to a requirement to notify participants of specific documents affecting claims–handling procedures or coverage decisions. Dissent at 10.

But the panel opinion addresses only the federal common law's application of the arbitrary–and–capricious standard of review based on a reservation of discretionary authority. Nothing in the panel opinion bears on a duty to disclose documents bearing on claims–handling procedures or coverage decisions. Those issues do not affect the standard of review. As a result, the panel opinion could not possibly bear on issues involving notice of claims–handling procedures or coverage decisions.

## 5. Conclusion

The panel addressed a narrow, case–specific situation: The plan documents provided to participants did not inform them of the existence of the document reserving discretion in plan interpretation.

As our dissenting colleague acknowledges, other courts have held that notice requires clarity in the plan language, recognizing that obscure, ambiguous language doesn't provide notice of discretionary authority. But even clear language is inadequate if it's buried in a secret document. Unable to find notice from a secret document, the panel majority concluded that a federal court should apply de novo review rather than the arbitrary–and–capricious standard of review.

Perhaps reasonable minds could have come to a different conclusion. Either way, however, the difference in views would relate only to the federal common law on the standard of review—not a plan administrator's duty under ERISA. Plan administrators can presumably continue to do what the plan administrator did here without violating ERISA. The only consequence is that the court would apply de novo review rather than the deferential arbitrary–and–capricious standard of review. Little reason exists to convene en banc to revisit this unremarkable application of the federal common law to the standard of review.

No. 18-4098, *Lyn M., et al. v. Premera Blue Cross, et al.*

**EID**, Circuit Judge, joined by **HARTZ** and **CARSON**, Circuit Judges, dissenting.

The panel majority imposes a new duty on ERISA plan administrators to notify plan members "that undistributed, inspectable documents could affect the scope of judicial review." *Lyn M. v. Premera Blue Cross*, 966 F.3d 1061, 1067 (10th Cir. 2020). This newfound notification requirement, however, is wholly divorced from the text of ERISA, unsupported by relevant caselaw, and lacking in any limiting principle. "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans," *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004), yet the proper administration of a vast number of plans is now left uncertain. *See* Pet. at 2 (stating that the panel majority's "holding will upset established practice in many thousands of ERISA plans"). Because this proceeding "involves a question of exceptional importance," Fed. R. App. P. 35(a)(2); *accord* 10th Cir. R. 35.1(A), I respectfully dissent from the court's order denying en banc review.

I.

David M. was a participant in a self-funded employee welfare benefits plan under ERISA, 29 U.S.C. § 1001, *et seq.*, and his daughter, L.M., was a beneficiary. Pursuant to the summary plan description, David could "ask to examine or receive free copies of all pertinent plan documents, records, and other information relevant to [a] claim by asking [the Plan Administrator]." *Lyn M.*, 966 F.3d at 1067. One of the plan documents—the "Plan Instrument"—stated the following:

> The Plan Administrator shall have all powers necessary or appropriate to carry out its duties, including, without limitation, *the sole discretionary authority to . . . interpret the provisions of the Plan and the facts and circumstances of claims for benefits . . . .* Benefits under this Plan will be paid only if the Plan Administrator decides in his discretion that the claimant is entitled to them.

Aplt. App'x vol. 1 at 64–65 (emphasis added).

After Premera Blue Cross denied their claim for L.M.'s psychiatric treatment at Eva Carlston Academy, David and L.M's mother, Lyn M., sued Premera for improper denial of medical benefits. The parties filed cross motions for summary judgment, and the district court granted Premera's motion and denied David and Lyn's motion. In doing so, the district court first found that, under the above quoted language of the Plan Instrument, Premera was "entitled to an arbitrary and capricious standard of review" rather than the default de novo review. *Lyn M. v. Premera Blue Cross*, 2018 WL 233615, at *3–6 (D. Utah May 23, 2018) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). The district court next found that Premera's denial of David and Lyn's claim was "not arbitrary and capricious." *Id.* at *8.

On appeal, the panel majority reversed, holding that Premera was not entitled to arbitrary and capricious review, and remanded to the district court for de novo reconsideration of the parents' claim. While it admitted that "the Plan Instrument creates discretionary authority," the majority found that the Plan Instrument "does not trigger arbitrary-and-capricious review" "[b]ecause members lacked notice of" its existence. *Lyn M.*, 966 F.3d at 1065. According to the panel, "[n]otice requires the plan administrator to disclose its discretionary authority or the existence of a document with

information about the discretionary authority," but Premera did neither. *Id.* at 1066–67. For instance, the majority found that the summary plan description "said nothing about" (1) "the existence of discretionary authority or other plan documents" or (2) "the possibility that undistributed, inspectable documents could affect the scope of judicial review." *Id.* at 1067. Having thus failed to show "that it provided notice of its reservation of discretionary authority," the panel majority held that Premera was not entitled to the more deferential standard. *Id.* at 1068.

It is this notification requirement that forms the basis of my continued disagreement with the panel majority. *See id.* at 1071 (Eid, J., dissenting).

## II.

Although the default rule is that the court reviews a plan administrator's decision to deny benefits *de novo*, *see Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), if a plan administrator enjoys discretionary authority under the plan, the court must affirm the administrator's decision unless it was arbitrary and capricious. *See Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1130 (10th Cir. 2011). Here, the Plan Instrument unambiguously granted the Plan Administrator "the sole discretionary authority to . . . interpret the provisions of the Plan and the facts and circumstances of claims for benefits." Aplt. App'x vol. 1 at 64–65; *see also id.* ("Benefits under this Plan will be paid only if the Plan Administrator decides in his discretion that the claimant is entitled to them."). Even the panel majority conceded that "the Plan Instrument create[d] discretionary authority." *Lyn M.*, 966 F.3d at 1065 & n.2. In my view, this should have been the beginning and the end of the standard of review

3

issue.  Because the Plan Instrument unambiguously grants the Plan Administrator discretionary authority, the panel majority should have affirmed the district court's application of arbitrary and capricious review.

Instead, the panel majority reversed and remanded by imposing a new duty on plan administrators to "notify" members of "the existence of discretionary authority or other plan documents" or "the possibility that undistributed, inspectable documents could affect the scope of judicial review."  *Id.* at 1067.  The newfound path taken by the panel majority, however, is wrong for several reasons.

First, the panel majority's notification requirement is wholly untethered from the text of ERISA.  In fact, the panel did not even attempt to cite to any statutory language to support its judicially-created notification requirement—nor could it, *see* 29 U.S.C. §§ 1021–22, 1024–25.

True, the Supreme Court has instructed courts in some cases to "develop a 'federal common law of rights and obligations under ERISA-regulated plans.'"  *Firestone*, 489 U.S. at 110 (citation omitted).  For instance, the Supreme Court looked to trust law to determine "the appropriate standard of review for actions under § 1132(a)(1)(B) challenging benefit eligibility determinations" because "ERISA does not set out" the standard.  *Id.* at 109–110.

But that does not mean courts can amend ERISA under the guise of the federal common law.  This court rejected such an attempt "to read into ERISA a requirement Congress elected to apply only to the Tax Code" "[i]n light of the Supreme Court's observation that 'ERISA is a comprehensive and reticulated statute, which Congress

4

adopted after careful study of private retirement pension plans.'" *Stamper v. Total Petroleum, Inc.*, 188 F.3d 1233, 1238–39 (10th Cir. 1999) (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 510 (1981)).

This court should have done the same here. As the Supreme Court has observed, ERISA "has an elaborate scheme in place for enabling beneficiaries to learn their rights and obligations at any time." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995). Specifically, this "elaborate scheme" "is built around reliance on the face of written plan documents" and consists of "a comprehensive set of 'reporting and disclosure' requirements." *Id.* (citing 29 U.S.C. §§ 1021–31). Accordingly, the present action is not a case in which, like in *Firestone*, Congress failed to address a necessary legal issue. On the contrary, Congress has already put in place reporting and disclosure requirements that are relevant to this case. For example, plan administrators are required to make plan documents available for its members, *see* 29 U.S.C. § 1024(b)(2), and must furnish those documents upon request, *see id.* § 1024(b)(4). Rather, this is a case in which the panel majority added its own notification requirement to Congress's "comprehensive set of 'reporting and disclosure' requirements." Perhaps ERISA, "although . . . quite thorough," "may not be a foolproof informational scheme," "it is the scheme that Congress devised." *Schoonejongen*, 514 U.S. at 84. I would have thus left this "comprehensive" scheme undisturbed.[1]

---

[1] The relevant duty imposed by ERISA's "comprehensive set of 'reporting and disclosure' requirements" was met in this case. 29 U.S.C. § 1024(b)(2) requires plan administrators to make a plan "available." *See also* 29 U.S.C. § 1024(b)(4) (requiring administrators to furnish documents upon request of a plan participant). Here, the

Second, the surrounding caselaw does not support the panel majority's notice requirement. Instead, the cases cited by the panel concern a separate "notice" issue—namely, what members would understand from the face of their plan rather than a distinct notification requirement to explain what was in the plan. *See id.* at 83 (explaining that ERISA "is built around reliance on the face of written plan documents" and consists of "a comprehensive set of 'reporting and disclosure' requirements").

For instance, this court in *Member Services Life Insurance Co. v. American National Bank & Trust Co. of Sapulpa*, 130 F.3d 950 (10th Cir. 1997), rejected a plan administrator's attempt to recoup already vested payments to a beneficiary via a later-enacted, retroactive amendment to the plan. *See id.* at 953. We did so in part because the beneficiary would not have had "notice" of this amendment at the time the payments were vested since the amendment would not yet have been incorporated into the plan. *See id.* at 956–57. To have held otherwise would have undermined the ERISA "scheme 'built around reliance on the face of written plan documents.'" *Id.* at 956 (quoting *Schoonejongen*, 514 U.S. at 83). Thus, while we stated that "a beneficiary can 'not be bound to terms of the policy of which he had no notice,'" *id.* at 956 (quoting *Bartlett v. Martin Marietta Operations Support, Inc. Life Ins. Plan*, 38 F.3d 514, 517 (10th Cir. 1994)), "notice" in that context concerned the terms of the plan—not a separate disclosure requirement explaining what was in the plan.

---

summary plan description stated that members "may ask to examine or receive free copies of all pertinent plan documents, records, and other information relevant to [a] claim by asking [the Plan Administrator]." *Lyn M.*, 966 F.3d at 1067. In other words, the plan was made "available" to David, and § 1024(b)(2) thus was satisfied.

6

The panel majority's reliance on *Herzberger v. Standard Insurance Co.*, 205 F.3d 327, 332–33 (7th Cir. 2000), and *Rodríguez-López v. Triple-S Vida, Inc.*, 850 F.3d 14, 21 (1st Cir. 2017), is similarly flawed. Both cases were concerned with whether the plan language was sufficiently clear for a plan administrator to reserve discretionary authority in considering claims and be afforded arbitrary and capricious review by the court. *See Herzberger*, 205 F.3d at 329 ("The issue is whether language in plan documents to the effect that benefits shall be paid when the plan administrator upon proof (or satisfactory proof) determines that the applicant is entitled to them confers upon the administrator a power of discretionary judgment, so that a court can set it aside only if it was 'arbitrary and capricious,' that is, unreasonable, and not merely incorrect, which is the question for the court when review is plenary ('de novo'). The cases directly on point say 'no,' ruling that the language in the plan documents must confer discretion in clearer terms."); *Rodríguez-López*, 850 F.3d at 21 ("A careful review of the language of the Plan leads us to conclude that it does not reflect a clear grant of discretionary authority . . . ."). But not only is that question a non-issue here—since the Plan instrument unquestionably reserved discretionary authority, *see Lyn M.* 966 F.3d at 1065 & n.2—it is also distinct from ERISA's reporting and disclosure requirements the majority now amends, *cf. Thurber v. Aetna Life Ins. Co.*, 712 F.3d 654, 659 (2d Cir. 2013), *abrogated on other grounds by Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. 136 (2016) (discussing the clarity of the plan language and an "actual notice" requirement as separate considerations).

7

In fact, the Second Circuit previously rejected a similar extension of *Herzberger* as that adopted by the panel majority here. In *Thurber*, a plan participant relied on *Herzberger* to argue that "she must have received actual notice of [the administrator's] reservation of discretion before [the administrator's] denial of benefits is entitled to deferential review." 712 F.3d at 659. The Second Circuit dismissed this argument, holding that "to the extent that the language in *Herzberger* could be read to require actual notice of the insurer's purported reservation of discretion, [the court] cannot detect any basis in law or [ERISA] to support this position." *Id.* In fact, the Second Circuit explicitly concluded that the Supreme Court in "*Firestone* [said] nothing about whether the [summary plan description] or other plan documents must contain language clearly reserving discretion" and that ERISA does not require that "the [summary plan description] contain language setting the standard of review." *Id.* Instead, the Second Circuit focused on the language of the plan and found "that the plan's reservation of discretion to [the administrator] was sufficient regardless of whether [the plan participant] had actual notice of the plan's language." *Id.* at 658 n.2. Thus, the panel majority's notification requirement is not only the product of a misreading of the caselaw, but it also directly conflicts with the Second Circuit's discussion in *Thurber*.

To be sure, the panel majority found superficial support for its notice requirement from *Stephanie C. v. Blue Cross Blue Shield of Mass.*, 813 F.3d 420 (1st Cir. 2016). At issue there was whether the language in a plan was sufficiently clear to grant the plan administrator discretionary authority and afford its denial of benefits arbitrary and capricious review, as well as whether a separate document could "cure the ambiguity

8

contained" in the plan's delegation of discretionary authority. *Id.* at 428–29. Following cases in line with *Herzberger*, *see e.g.*, *Gross v. Sun Life Assur. Co. of Canada*, 734 F.3d 1, 15 (1st Cir. 2013), the First Circuit first found that the language purported to grant discretionary authority to the plan administrator was "not sufficiently clear to give notice to either a plan participant or a covered beneficiary that the claims administrator enjoy[ed] discretion in interpreting and applying plan provisions." *Stephanie C.*, 813 F.3d at 428. But for the same reason *Herzberger* and *Rodríguez-López* are unhelpful to the majority, the First Circuit's discussion of "notice" in *Stephanie C.* is also unhelpful— "notice" in all three of these cases related to the clarity of the plan language.

The *Stephanie C.* court further held, however, that the separate document was "not available to cure the ambiguity contained in the" plan language the court found insufficient to grant the plan administrator discretion. *Id.* at 429. According to the First Circuit, this document—"a financing arrangement between the employer and the claims administrator"—could not be used to clarify the "terms that concern the relationship between the claims administrator and the beneficiaries" where that financing agreement was not "disclosed" to the beneficiaries "when coverage attached" and "was never seasonably disseminated to the beneficiaries." *Id.*

*Stephanie C.* cannot be employed to support a notification requirement like that imposed by the panel majority here. *Stephanie C.* is factually distinct: The Plan Instrument here governed the relationship between the parties, whereas the beneficiaries in *Stephanie C.* were not parties to the financing arrangement. In addition, the *Stephanie C.* court did not ground its discussion in ERISA's "comprehensive set of 'reporting and

9

disclosure' requirements" the court should not disturb. Furthermore, the disclosure requirement in *Stephanie C.* was a distribution requirement, not a requirement that the plan administrator must notify members "that undistributed, inspectable documents could affect the scope of judicial review," *Lyn M.*, 966 F.3d at 1067.

Third, and of greatest concern, the panel majority's newfound requirement lacks a limiting principle and thus violates a core tenet of ERISA to impose uniform and clear duties upon plan administrators. *See Davila*, 542 U.S. at 208 ("The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans."). As I argued in my dissent to the panel opinion, the logic of the majority's opinion could require, for example, specific notice of a document that might impact claims processing procedures. It may also require specific notice of a document that might impact how coverage decisions are made. Once specific notice of a document impacting judicial review is required, it is but a short jump to requiring specific notice of documents impacting other participant rights. As consequence, many plan administrators are left uncertain about what they need to now disclose to their members—only the next case, and perhaps the case after that, and so on, will enlighten plan administrators of the extent of their duties to their members outside of those Congress has established. The court may now find itself in the role of creating its own "elaborate scheme" by clarifying and extending the majority's notification requirement despite the fact that Congress has already "devised" "a comprehensive set of 'reporting and disclosure' requirements." This untenable position warrants en banc review of this case.

## III.

For the foregoing reasons, this case is not only wrongly decided but is appropriate for en banc rehearing. I respectfully dissent from the court's order denying en banc review.